## McLAUGHLIN, SECRETARY OF LABOR *v.* RICHLAND SHOE CO.

No. 86–1520.   Argued February 24, 1988—Decided May 16, 1988

STEVENS J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which BRENNAN and BLACKMUN, JJ., joined, *post*, p. 135.

*Deputy Solicitor General Ayer* argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Richard G. Taranto, George R. Salem, Allen H. Feldman,* and *Mary-Helen Mautner.*

*Leon Ehrlich* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

The question presented concerns the meaning of the word "willful" as used in the statute of limitations applicable to civil actions to enforce the Fair Labor Standards Act (FLSA). The statute provides that such actions must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 61 Stat. 88, 29 U. S. C. § 255(a).

I

Respondent, a manufacturer of shoes and boots, employed seven mechanics to maintain and repair its equipment. In 1984, the Secretary of Labor (Secretary) filed a complaint alleging that "in many work weeks" respondent had failed to pay those employees the overtime compensation required by the FLSA. As an affirmative defense, respondent pleaded the 2-year statute of limitations. The District Court found, however, that the 3-year exception applied because respondent's violations were willful, and entered judgment requiring

---

*Robert E. Williams, Douglas S. McDowell,* and *Garen E. Dodge* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging affirmance.

respondent to pay a total of $11,084.26, plus interest, to the seven employees. *Donovan* v. *Richland Shoe Co.*, 623 F. Supp. 667 (ED Pa. 1985).

In resolving the question of willfulness, the District Court followed Fifth Circuit decisions that had developed the so-called *Jiffy June* standard. The District Court explained:

> "The Fifth Circuit has held that an action is willful when 'there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?' *Coleman* v. *Jiffy June Farms, Inc.*, 458 F. 2d 1139, 1142 (5th Cir.)[, cert. denied, 409 U. S. 948 (1972)].
>
> "This standard requires nothing more than that the employer has an awareness of the possible application of the FLSA. *Id.; Castillo* v. *Givens*, 704 F. 2d 181, 193 (5th Cir.)[, cert. denied, 464 U. S. 850 (1983)]. 'An employer acts willfully and subjects himself to the three year liability if he knows, or has reason to know, that his conduct is *governed* by the FLSA.' *Brennan* v. *Heard*, 491 F. 2d 1, 3 (5th Cir. 1974) (emphasis in original). *See also Donovan* v. *Sabine Irrigation Co., Inc.*, 695 F. 2d 190, 196 (5th Cir.)[, cert. denied, 463 U. S. 1207 (1983)]." 623 F. Supp., at 670–671.

On appeal respondent persuaded the Court of Appeals for the Third Circuit "that the *Jiffy June* standard is wrong because it is contrary to the plain meaning of the FLSA." *Brock* v. *Richland Shoe Co.*, 799 F. 2d 80, 82 (1986). Adopting the same test that we employed in *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 125–130 (1985), the Court of Appeals held that respondent had not committed a willful violation unless "it knew or *showed reckless disregard for the matter of whether* its conduct was prohibited by the FLSA." 799 F. 2d, at 83 (emphasis in original). Accordingly, it va-

cated the District Court's judgment and remanded the case for reconsideration under the proper standard.

The Secretary filed a petition for certiorari asking us to resolve the post-*Thurston* conflict among the Circuits concerning the meaning of the word "willful" in this statute.[1] The petition noted that the statute applies not only to actions to enforce the overtime and recordkeeping provisions of the FLSA, but also to the Equal Pay Act,[2] the Davis-Bacon Act,[3] the Walsh-Healey Act,[4] and the Age Discrimination in Employment Act (ADEA).[5] Somewhat surprisingly, the petition did not endorse the *Jiffy June* standard that the Secretary had relied on in the District Court and the Court of Appeals, but instead invited us to adopt an intermediate standard. We granted certiorari, 484 U. S. 813 (1987), and now affirm.

## II

Because no limitations period was provided in the original 1938 enactment of the FLSA, civil actions brought thereunder were governed by state statutes of limitations. In the Portal-to-Portal Act of 1947, 61 Stat. 84, 29 U. S. C. §§ 216, 251–262, however, as part of its response to this Court's ex-

---

[1] Compare *Russo* v. *Trifari, Krussman & Fishel, Inc.*, 837 F. 2d 40, 45 (CA2 1988) (applying *Thurston* standard); *Peters* v. *Shreveport*, 818 F. 2d 1148, 1167–1168 (CA5 1987) (overruling *Jiffy June*, applying *Thurston*), cert. dism'd, 485 U. S. 930 (1988); and *Walton* v. *United Consumers Club, Inc.*, 786 F. 2d 303, 308–311 (CA7 1986) (applying *Thurston*), with *Brock* v. *Shirk*, 833 F. 2d 1326, 1329 (CA9 1987) (adhering to *Jiffy June*); *Crenshaw* v. *Quarles Drilling Corp.*, 798 F. 2d 1345, 1349–1350 (CA10 1986) (adhering to *Jiffy June*); *Donovan* v. *Bel-Loc Diner, Inc.*, 780 F. 2d 1113, 1117 (CA4 1985) (adhering to *Jiffy June*); *Secretary of Labor* v. *Daylight Dairy Products, Inc.*, 779 F. 2d 784, 789 (CA1 1985) (adhering to *Jiffy June*); and *Brock* v. *Georgia Southwestern College*, 765 F. 2d 1026, 1038–1039 (CA11 1985) (adhering to *Jiffy June;* no mention of *Thurston*).

[2] See 52 Stat. 1062, as amended, 29 U. S. C. § 206(d)(3).

[3] 46 Stat. 1494, as amended, 40 U. S. C. § 276(a) *et seq.*

[4] 49 Stat. 2036, as amended, 41 U. S. C. § 35 *et seq.* (1982 ed. and Supp. IV).

[5] See 81 Stat. 604, as amended, 29 U. S. C. § 626(e)(1).

pansive reading of the FLSA,[6] Congress enacted the 2-year statute to place a limit on employers' exposure to unanticipated contingent liabilities.[7] As originally enacted, the 2-year limitations period drew no distinction between willful and nonwillful violations.

In 1965, the Secretary proposed a number of amendments to expand the coverage of the FLSA, including a proposal to replace the 2-year statute of limitations with a 3-year statute. The proposal was not adopted, but in 1966, for reasons that are not explained in the legislative history, Congress enacted the 3-year exception for willful violations.[8]

The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations. It is equally obvious to us that the *Jiffy June* standard of willfulness—a standard that merely requires that an employer knew that the FLSA "was in the picture"—virtually obliterates any distinction between

---

[6] See *Lorillard* v. *Pons*, 434 U. S. 575, 581, n. 8 (1978).

[7] The Portal-to-Portal Act also made the award of liquidated damages discretionary rather than mandatory and authorized exemptions for certain types of wage plans. In this case, respondent contended that one of those exemptions—the exemption for "Belo" plans, see 29 U. S. C. § 207(f)—was applicable.

[8] Petitioner directs us to a memorandum placed in the Congressional Record by Senator Taft during a 1974 debate over amendments to the FLSA that did not alter the language at issue here. See Brief for Petitioner 32. The memorandum described the *Jiffy June* standard as the then-prevailing interpretation of § 255(a). See 120 Cong. Rec. 4710 (1974). Petitioner concludes that "[n]otwithstanding that explicit focus on the judicial construction of willfulness, Congress amended Section 255 without addressing the 'willful violation' standard of Section 255(a)." Brief for Petitioner 33. This passing reference to the then-prevailing standard is too slender a reed, we think, to support the inference petitioner would have us draw, namely, that Congress approved the *Jiffy June* standard in enacting the 1974 amendments by mentioning it as the current interpretation and failing to amend that reading.

willful and nonwillful violations. As we said in *Trans World Airlines, Inc.* v. *Thurston,* 469 U. S., at 128, "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." Under the *Jiffy June* standard, the normal 2-year statute of limitations would seem to apply only to ignorant employers, surely not a state of affairs intended by Congress.[9]

In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." See Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act.

The strongest argument supporting the *Jiffy June* standard is that it was widely used for a number of years.[10] The

---

[9] The ease with which the *Jiffy June* standard can be met is exemplified in this case. As the District Court wrote:

"[T]he vice president and general manager of the defendant was aware that the FLSA existed and that it governed overtime systems such as that used for the Richland mechanics. . . . Thus, although Isenberg did not state that he thought that the system used was contrary to the provisions of the FLSA, he did state that he knew that the FLSA applied. I believe that this admission is sufficient to satisfy the liberal willfulness requirement of the FLSA." *Donovan* v. *Richland Shoe Co.,* 623 F. Supp. 667, 671 (ED Pa. 1985).

[10] See, *e. g., Coleman* v. *Jiffy June Farms, Inc.,* 458 F. 2d 1139, 1142 (CA5 1971), cert. denied, 409 U. S. 948 (1972); *Brennan* v. *Heard,* 491 F. 2d 1, 3 (CA5 1974); *Marshall* v. *Union Pacific Motor Freight Co.,* 650 F. 2d 1085, 1091–1093 (CA9 1981); *Marshall* v. *Erin Food Services, Inc.,* 672 F. 2d 229, 231 (CA1 1982); *Donovan* v. *Carls Drug Co., Inc.,* 703 F. 2d 650, 652–653 (CA2 1983); *EEOC* v. *Central Kansas Medical Center,* 705 F. 2d 1270, 1274–1275 (CA10 1983).

standard was not, however, consistently followed in all Circuits.[11] In view of the fact that even the Secretary now shares our opinion that it is not supported by the plain language of the statute, we readily reject it.[12]

We also reject the intermediate alternative espoused by the Secretary for the first time in this Court. Relying on the opinion of the Court of Appeals for the District of Columbia Circuit in *Laffey* v. *Northwest Airlines, Inc.*, 185 U. S. App. D. C. 322, 352–354, 567 F. 2d 429, 461–462 (1976), cert. denied, 434 U. S. 1086 (1978), she argues that we should announce a two-step standard that would deem an FLSA violation willful "if the employer, recognizing it might be covered by the FLSA, acted without a reasonable basis for believing that it was complying with the statute." Brief for Petitioner 41. This proposal differs from *Jiffy June* because it would apparently make the issue in most cases turn on whether the employer sought legal advice concerning its pay practices.

---

.  [11] See, *e. g., Hodgson* v. *Cactus Craft of Arizona*, 481 F. 2d 464, 467 (CA9 1973) (willful violation after two prior warnings and unkept promises of compliance); *Laffey* v. *Northwest Airlines, Inc.*, 185 U. S. App. D. C. 322, 352–355, 567 F. 2d 429, 459–462 (1976) (intermediate standard; see text following this footnote), cert. denied, 434 U. S. 1086 (1978); *Donovan* v. *KFC National Management Co.*, 682 F. 2d 603, 605 (CA6 1982) (voluntary conduct that employer knows might violate Act is willful).

[12] The Secretary's present opinion of the *Jiffy June* standard is expressed in her brief:

"As this Court found in *Thurston* (469 U. S. at 128), the 'in the picture' standard seems to give too little effect to Congress's express intent to create two tiers of liability in the FLSA limitations provision. Among employers eventually found to have violated the FLSA, it would seem that there are not many who did not know that the Act was 'in the picture.' It may be 'virtually impossible for an employer to show that he was unaware of the Act and its potential applicability' *(ibid.).* In addition, the *Jiffy June* standard would impose a third year of liability even on those employers who firmly and reasonably (albeit wrongly) believe that their pay practices are lawful, a result that seems counter to the concerns expressed in the legislative process during the 89th Congress." Brief for Petitioner 39–40 (footnote omitted).

It would, however, permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects. We believe the Secretary's new proposal, like the discredited *Jiffy June* standard, fails to give effect to the plain language of the statute of limitations.[13]

Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the Secretary must prove that the employer's conduct was willful as that term is defined in both *Thurston* and this opinion.[14]

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

The Court today imports into a limitations provision of the Fair Labor Standards Act (FLSA) the "knowing or reckless" definition of "willful" that we previously adopted in construing a liquidated damages provision of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.* See *Trans World*

---

[13] We recognize that there is some language in *Trans World Airlines* v. *Thurston*, 469 U. S. 111 (1985), not necessary to our holding, that would seem to permit a finding of unreasonableness to suffice as proof of knowing or reckless disregard, and thus that would render petitioner's standard an appropriate statement of the law. See *id.*, at 126. Our decision today should clarify this point: If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful under either petitioner's test or under the standard we set forth. If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then, although its action would be considered willful under petitioner's test, it should not be so considered under *Thurston* or the identical standard we approve today.

[14] Of course, we express no view as to whether, under the proper standard, respondent's violation was "willful." That determination is for the District Court to make on remand from the Court of Appeals.

*Airlines, Inc.* v. *Thurston*, 469 U. S. 111 (1985). In doing so, the Court departs from our traditional contextual approach to the definition of the term "willful," ignores significant differences between the relevant provisions of the two Acts, and fails to accommodate the remedial purpose of civil actions under the FLSA. For these reasons, I would accept the slightly more expansive definition of "willful" urged by the Secretary of Labor and adopted by the District of Columbia Circuit in *Laffey* v. *Northwest Airlines, Inc.*, 185 U. S. App. D. C. 322, 354–355, 567 F. 2d 429, 461–462 (1976), cert. denied, 434 U. S. 1086 (1978). Under this latter standard, a violation of the FLSA is "willful" and therefore subjects an employer to a 3-year rather than a 2-year statute of limitations if the employer knew that there was an appreciable possibility that it was covered by the Act and failed to take steps reasonably calculated to resolve the doubt.

I have no quarrel with the opinion of the Court to the extent that it rejects the "in the picture" standard of willfulness elaborated in *Coleman* v. *Jiffy June Farms, Inc.*, 458 F. 2d 1139, 1142 (CA5 1971), cert. denied, 409 U. S. 948 (1972). As the Court succinctly explains, by permitting a finding of willful violation every time an employer knew that the FLSA was "in the picture," the *Jiffy June* standard "virtually obliterates any distinction between willful and nonwillful violations." *Ante*, at 132–133. But the Court's focus on the shortcomings of the *Jiffy June* standard is disingenuous, because neither party in the instant case urged the adoption of that standard before this Court. Rather, the dispute in this case pits the *Thurston* "knowing or reckless" standard, adopted by the Third Circuit in this case and urged by respondent Richland Shoe, against the *Laffey* standard, adopted by the D. C. Circuit in an earlier case and urged by petitioner Secretary of Labor. The Court does not address this dispute until the penultimate page of its opinion, and its reasons for embracing the former standard over the latter are not convincing.

The Court seems to rely in part on "common usage" of the word "willful" in adopting the "knowing or reckless" standard. *Ante*, at 133, citing Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977). The Court fails to acknowledge, however, that the dictionary includes a wide variety of definitions of "willful," ranging from "malicious" to "not accidental," and including precisely the intermediate definition urged by the Secretary—under which an act is willful if it is "done without ground for believing it is lawful." Black's Law Dictionary 1434 (5th ed. 1979); see *United States* v. *Murdock*, 290 U. S. 389, 394 (1933) (acknowledging all three possible meanings of "willful"). By refusing to recognize the various meanings that the term "willful" has come to bear in different legal settings, the Court today departs from our previous contextual approach to defining that term. In *Spies* v. *United States*, 317 U. S. 492, 497 (1943), this Court explained that "willful" is a word "of many meanings, its construction often being influenced by its context." Since *Spies*, we consistently have looked to the statutory context in which the word appears in order to determine its proper meaning. See, *e. g.*, *Screws* v. *United States*, 325 U. S. 91, 101–103 (1945); *United States* v. *Bishop*, 412 U. S. 346, 356–361 (1973). The Court's apparent abandonment of this approach in favor of a nonexistent "plain language" definition of "willful," *ante*, at 133, is unprecedented and unwise.

Had the Court properly applied the traditional contextual approach, I believe it would have adopted the willfulness standard urged by the Secretary. Such an approach would have revealed that the definition of "willful" adopted previously in the context of the ADEA in *Trans World Airlines, Inc.* v. *Thurston*, *supra*, does not transplant easily to the context of the FLSA. In *Thurston*, this Court explicitly acknowledged that its choice of the "knowing or reckless" definition of "willful" was influenced by the "punitive" nature of the double damages that flow from a finding of willfulness under the ADEA. *Id.*, at 125. In the instant case, a finding

of willfulness leads not to a punitive sanction, but merely to an extended period during which an unlawfully underpaid employee may recover compensatory damages. What is at stake here is the applicability of the remedial provisions of the FLSA in the first instance. Perhaps recognizing this crucial distinction, the Court in *Thurston* expressly left open the possibility that the "knowing or reckless" definition of "willful" adopted for the ADEA might not be appropriate for the FLSA statute of limitations. See *id.*, at 127–128, and n. 21. The answer that the Court provides today may have an attractive tidiness, but it fails to recognize the contextual differences that call for different standards of willfulness in varying provisions of the two Acts.* As a result, the Court has adopted a definition of "willful" that is improperly narrow in light of its effect on the remedial scope of the FLSA.

Just how narrow that definition is remains to be seen. It is not entirely clear that the "knowing or reckless" definition of willfulness adopted by the Court will differ significantly in practical application from the approach that I would adopt. Employers who know that there is an appreciable possibility that the FLSA covers their operations but fail to take reasonable measures to resolve their doubts may well be deemed "reckless" in many cases under the *Thurston* standard. Although it is difficult to foretell, it appears to me unlikely that a large number of FLSA defendants will fall into the narrow category of employers who "unreasonably" but not "recklessly" fail to apprise themselves of the requirements of the

---

*The Court bases its adoption of the *Thurston* standard of willfulness on the fear that the Secretary's alternative standard, like the *Jiffy June* standard, would undermine Congress' two-tiered liability scheme by permitting a finding of willfulness on a showing of "nothing more than negligence." *Ante*, at 135. This fear is ungrounded. In order for a violation to be "willful" under the Secretary's standard, an employer must operate in the face of a known risk that the FLSA covers its operation, without taking reasonable steps to ensure its compliance. This state of mind is sufficiently different from mere negligence to maintain the two-tiered structure of the FLSA.

Act.   See *ante*, at 135, n. 13.   Despite the potentially small significance of our different interpretations, however, I cannot agree with the Court's approach to or resolution of the willfulness issue in this case.   I therefore respectfully dissent.