**CEDAR RAPIDS ASSOCIATION OF FIRE FIGHTERS, LOCAL 11, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, Appellant,**

v.

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD,**
Appellee,

and

**City of Cedar Rapids, Iowa, Intervenor–Appellee.**

No. 93–1475.

Supreme Court of Iowa.

Oct. 19, 1994.

Charles E. Gribble, Des Moines, for appellant.

Jan V. Berry, Des Moines, for appellee.

James H. Flitz, Cedar Rapids, for intervenor-appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL and ANDREASEN, JJ.

LARSON, Justice.

This case arises out of a prohibited practice complaint under Iowa Code sections 20.10(1) and 20.11 (1991) by the Cedar Rapids Association of Fire Fighters, based on a claim that the City of Cedar Rapids had violated the public employee bargaining provisions of section 20.17. The Public Employment Relations Board (PERB) dismissed the complaint. The district court found no merit in the Association's complaint, and we agree.

The facts were stipulated by the parties. At the fifth negotiating session for a new collective bargaining contract to be effective on July 1, 1992, the City proposed two changes to the existing contract. One involved scheduling, and the other involved a rule regarding the treatment of time trades among the fire fighters.

In the existing contract, section 11.2(a) provided that "Line Personnel will follow a nineteen-day rotating schedule of fifty-three

hours." The City proposed to change this to a twenty-eight-day rotating schedule. The existing contract in section 11.5(b) provided a liberal time-trade policy: "An employee may have the privilege to change a workday with another employee . . . on their mutual agreement and with the approval of the employee's company officer and district chief." The City proposed to eliminate all provisions regarding time trading.

We do not know from the record why the City waited until the fifth session to raise its proposals. The brief stipulation of facts, however, implies that the delay might have been caused by the City's waiting for the results of a study by an outside consultant.

The Association does not complain about the substance of the City's proposals; it objects only to the procedure it followed in presenting them. By failing to present the proposed contract changes in the public session, the Association contends that the City violated section 20.17 and thus committed a per se "prohibited practice" under section 20.10(1).

Under Iowa Code section 20.17(3), negotiating sessions and strategy meetings of the parties are essentially closed to the public. That section provides,

[h]owever, [that] the employee organization shall present its initial bargaining position to the public employer at the first bargaining session. The public employer shall present its initial bargaining position to the employee organization at the second bargaining session, which shall be held no later than two weeks following the first bargaining session. Both sessions shall be open to the public and subject to the provisions of chapter 21. Hearings conducted by arbitrators shall be open to the public.

Iowa Code § 20.17(3) (1991).

Under this section, the City was directed to present its initial bargaining position at the second session, which was held on October 14, 1991. (This session was required by section 20.17(3) to be open to the public.) On November 18, 1991, when the City's proposals were first presented, the session was not open to the public under the statute.

According to the Association, section 20.17 must be interpreted so that nothing may be proposed at private negotiating sessions that had not been presented publicly at one of the two initial negotiating sessions. The reason, it says, is that the public must know "the outside parameters of the dispute."

According to the Association's argument, neither party could later raise an issue for any reason. That would be so even if the parties agreed that a clarification of an existing contract provision was necessary or that a change in an existing provision was mutually agreeable, or even required by intervening legislation. In all of these events, the parties' hands would be tied, and any negotiating party who proposed a change or clarification would run the risk of a prohibited practice complaint.

We believe the Association's view of section 20.17 is unrealistic. In fact, we believe it would encourage the parties to be overinclusive in their initial demands, in order to allow them room for future maneuvering. The Association virtually concedes this when it states that "[t]he parties may, and likely will, modify their initial bargaining positions . . . during the course of negotiations."

The language of section 20.17 itself, that the parties shall present their *initial* bargaining positions, suggests that the parties will be able to change their positions to some extent as the negotiation proceedings go forward.

PERB has agreed with the Association that the initial proposal must be the "outside parameters" of the parties' positions. *See Davenport Community Sch. Dist. v. Davenport Educ. Ass'n,* 83 PERB 2458, at 4. But PERB has not ruled, nor have we, that the failure to include an issue in the initial proposal would either foreclose all future consideration of it or automatically result in a per se violation of section 20.10(1).

We believe that section 20.17 requires that the parties' initial statement of position be a meaningful one, giving reasonable notice of their proposals to the other side and to the public. If the initial proposal is so devoid of meaningful information that it does not give reasonable notice, the offending party might

well be found to have violated section 20.17. If the effect is to frustrate the negotiating process, it might even amount to a willful refusal to negotiate and thus a prohibited practice under section 20.10(1).

■ In this case, we do not believe that the failure of the City to include the two proposals in its initial statement was such a substantial deviation from section 20.17 to hold that it was a violation of it. Even if the City had failed to comply with section 20.17, it would not necessarily amount to a prohibited practice.

■ Iowa Code section 20.10(1) provides:

It shall be a prohibited practice for any public employer, public employee or employee organization to willfully refuse to negotiate in good faith with respect to the scope of negotiations as defined in section 20.9.

Our court has never interpreted the word "willfully" in this section. The United States Supreme Court, however, has interpreted it in the context of the Fair Labor Standards Act (FLSA) and the Age Discrimination in Employment Act (ADEA).

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Court considered the meaning of "willful" as used in the statute of limitations applicable to civil actions enforcing the FLSA.

The Supreme Court made it clear that Congress, by using the word "willful," intended to distinguish between ordinary violations and those that were willful. *Id.* at 132, 108 S.Ct. at 1681, 100 L.Ed.2d at 122. It said:

The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in [*Trans World Airlines, Inc. v.*] *Thurston* [, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)]—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act.

*Id.* at 133, 108 S.Ct. at 1681, 100 L.Ed.2d at 123.

More recently, the Supreme Court placed a similar interpretation on "willful" as it is used in the ADEA.

We therefore reaffirm that the *Thurston* definition of "willful"—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—applies to all disparate treatment cases under the ADEA.

*Hazen Paper Co. v. Biggins*, 507 U.S. ——, ——, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338, 351 (1993).

Applying a similar analysis to section 20.10, we believe that a "willful" refusal to negotiate under section 20.10(1) means that a party either knew or showed reckless disregard for the matter of whether its action amounted to a refusal to negotiate in good faith with respect to the scope of negotiations under section 20.9. Obviously, every breach of the bargaining statute would not automatically rise to this level. The action relied on to establish a prohibited practice complaint must be so significant in its scope and done with such knowledge or reckless disregard for the facts as to effectively thwart the negotiating proceedings.

■ In this case, the Association does not claim that the action of the City was willful or that any alleged violation of section 20.17 was so substantial as to constitute a willful refusal to negotiate in good faith.

We agree with PERB and the district court that the Association's claim of a prohibited practice under section 20.10(1) has not been established. Accordingly, we affirm.

**AFFIRMED.**