# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1386

_____

| | | |
|---|---|---|
| Susan W. Hanger, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| Lake County, a political subdivision | * | |
| of the State of Minnesota; Wilma H. | * | |
| Clark, personally and individually; | * | |
| Clair A. Nelson, personally and | * | |
| individually; Sharon Hahn, personally | * | |
| and individually; Stanley Nelson, | * | |
| personally and individually; Derrick | * | |
| Goutermont, personally and | * | |
| individually; and Pamela Parkinson, | * | |
| personally and individually, | * | |
| | * | |
| Defendants-Appellees. | * | |
| | * | |

_____

Submitted: February 12, 2004
Filed: December 7, 2004

_____

Before MELLOY, McMILLIAN, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Susan Hanger appeals from the district court's[1] grant of summary judgment in favor of her former employer, Lake County, Minnesota, and the Lake County Board of Commissioners on her claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. We affirm.

I.     Background

Ms. Hanger began her employment with Lake County in April 1996 as Personnel Officer and Clerk to the Lake County Board of Commissioners. Ms. Hanger's work responsibilities included various forms of human resources administration. In 1998, the Board of Commissioners changed Ms. Hanger's title to Human Resources Administrator, and then to Human Resources and Safety Administrator. As the department head, Ms. Hanger maintained responsibility for the department budget, reported directly to the Board of Commissioners, and signed her own time sheets.

In Ms. Hanger's June 1998 evaluation, the Board of Commissioners expressed concern about her job performance. The Board of Commissioners took issue with Ms. Hanger's lack of organization and communication skills and her inability to perform consistently. It further noted that Ms. Hanger was inflexible and easily irritated.

In May 1999, one month before her annual performance evaluation, Ms. Hanger took leave under the FMLA to give birth. The Board of Commissioners hired

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Pamela Parkinson to serve in Ms. Hanger's stead while Ms. Hanger took FMLA leave.

Ms. Parkinson apparently impressed the Board of Commissioners during her tenure as the interim department head of the Human Resources Department. On July 13, 1999, approximately two weeks before Ms. Hanger was to return from FMLA leave, Ms. Parkinson and the Board of Commissioners met to discuss ways to restructure the Human Resources Department that would enable Ms. Parkinson to remain working in the department after Ms. Hanger returned. The Board specifically discussed where to put Ms. Parkinson in the chain of command. Commissioner Clair Nelson stated that he intended to place Ms. Parkinson in a position of authority over Ms. Hanger. Ms. Parkinson advised the Board of Commissioners to seek legal advice on whether their proposed actions would violate the FMLA.

On July 20, 1999, six days prior to Ms. Hanger's return to work, the Board of Commissioners met with her to discuss the restructuring of the Human Resources Department. Commissioner Nelson told Ms. Hanger that Ms. Hanger would be working for Ms. Parkinson when she returned. Ms. Hanger drafted a letter of resignation shortly thereafter, but she did not submit it to the County.

On July 26, 1999, Ms. Hanger returned to work. Ms. Parkinson advised Ms. Hanger that she was no longer to communicate directly with any of the Board of Commissioners. Instead, Ms. Hanger was to direct her comments through Ms. Parkinson. Ms. Parkinson, rather than Ms. Hanger, controlled the department's budget, and Ms. Hanger was required to submit time sheets for Ms. Parkinson's review. Ms. Hanger continued to receive the same pay and benefits she had been receiving when she took FMLA leave.

On her first day back to work, Ms. Hanger discovered that someone had accessed pornographic websites on her computer. Ms. Hanger believed Ms.

Parkinson, whose password was stored in the computer, was the culprit. Ms. Hanger notified Lake County's computer personnel and told two other employees about the pornography. A few days later, Ms. Hanger met with Commissioner Sharon Hahn to discuss the issue. Commissioner Hahn expressed concerned about the misuse of Ms. Hanger's computer but did not blame Ms. Hanger for accessing the pornography. However, Commissioner Hahn chided Ms. Hanger for spreading the news of her discovery to other employees.

On August 10, 1999, Ms. Hanger submitted her resignation. Ms. Hanger then filed a complaint asserting that Lake County and the Board of Commissioners violated her rights under the Veteran's Preference Act of the State of Minnesota. At a hearing on the matter, three members of the Board of Commissioners testified that they never intended to place Ms. Parkinson in a supervisory position over Ms. Hanger. This testimony contradicted statements made during the July 13, 1999 meeting of the Board of Commissioners. When faced with a tape recording of the July 13, 1999 meeting, the Board of Commissioners withdrew their objection to Ms. Hanger's Veteran's Preference Act claim and reinstated her to her former position with the full responsibilities of department head. In March 2000, Ms. Hanger resigned once more and moved with her family out of the country.

On August 17, 2001, two years and one week after her first resignation, Ms. Hanger filed suit against the present defendants. Among other things, she claimed that the defendants violated the FMLA by failing to restore her to the same or an equivalent position after her FMLA leave. The district court granted summary judgment in favor of the defendants, finding that Ms. Hanger's claims were time barred.

II.    Applicable Law and Discussion

We review the district court's grant of summary judgment de novo. First Bank of Marietta v. Hogge, 161 F.3d 506, 510 (8th Cir. 1998). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Id.

The FMLA provides eligible employees the right to twelve weeks of maternity leave. 29 U.S.C. § 2612(a)(1)(A). On return from such leave, an employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced[,] or . . . to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A),(B). "An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. 825.215(a); see also 29 C.F.R. 825.215(e) ("An equivalent position must have substantially similar duties, conditions, responsibilities, privileges and status as the employee's original position.").

Congress created a two-tiered statute of limitations for FMLA claims. Generally, the statute of limitations for an FMLA violation is "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). However, where an employer engages in a "willful violation" of the FMLA, the statute of limitations is extended to three years. 29 U.S.C. § 2617(c)(2).

Ms. Hanger alleges that defendants violated the FMLA by failing to return her to the same position she held prior to her leave of absence. When she returned to work, Ms. Hanger received the same salary and benefits she had before taking leave. However, Ms. Hanger was no longer considered the head of the human resources department; she lost control over the department's budget, had to submit time sheets to Ms. Parkinson, and no longer reported directly to the Board of Commissioners.

We need not determine whether Ms. Hanger's allegations survive summary judgment on the merits, because we agree with the district court that Ms. Hanger's FMLA claim is time barred. The Board of Commissioners explained the restructuring of the department to Ms. Hanger on July 20, 1999, and the changes in Ms. Hanger's employment were realized when she returned to work on July 26, 1999. We do not believe that each and every instance when these changes may have been enforced constitutes a new violation of the FMLA, nor do we believe that the Board of Commissioners committed an additional violation of the FMLA by accepting Ms. Hanger's resignation. Rather, we find that Ms. Hanger's reinstatement claim accrued on July 26, 1999. Cf. Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (in a Title VII and Civil Rights Act case where the only alleged discrimination occurred at the time the plaintiff-professor was denied tenure, the statute of limitations began at the time of that decision, "even though . . . the *effects* of the denial of tenure . . . did not occur until later"). Ms. Hanger filed her FMLA complaint on August 17, 2001. As such, Ms. Hanger failed to meet the two-year statute of limitations.[2] The question remaining is whether the three-year statute of limitations applies.

---

[2]The district court refused to toll the statute of limitations for equitable reasons under a "continuing violations theory." We agree that there is no basis for an equitable modification of the statute of limitations in this case. Ms. Hanger was aware of the alleged violation no later than July 26, 1999, and the Board of Commissioners did nothing inappropriate to impede her from filing suit.

As noted above, the statute of limitations is increased from two to three years in cases that involve "willful" violations of the FMLA. 29 U.S.C. § 2617(c)(2). The FMLA does not define willful, and the Supreme Court has not expressly defined it in the context of the FMLA. However, in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), the Court defined willful in the context of the Fair Labor Standards Act (FLSA) as follows: "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Like the First Circuit, we believe the Supreme Court's definition for "willful" under the FLSA applies to the term "willful" in the FMLA. See Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003) (noting that the FMLA and the FLSA "use the term 'willful' in similar ways and in identical contexts: both provide for a two-year statute of limitations except in cases of willful violations, when a three-year limitations period applies"). We also find the Court's analysis in McLaughlin to be particularly helpful on the facts of the present case.

When the Court adopted the above standard for willfulness, it rejected an alternative, less stringent standard that "merely require[d] that an employer knew that the FLSA was in the picture[.]" 486 U.S. at 132. The Court found that Congress "intended to draw a significant distinction between ordinary violations and willful violations." Id. at 132. The Court then rejected the less stringent standard because it "virtually obliterate[d] any distinction between willful and nonwillful violations [and] 'it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability.'" Id. at 132-33 (quoting Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985)). In this critique of the less stringent standard, the Court made clear that an employer's general knowledge regarding a statute's potential applicability does not prove willfulness.

The Court also rejected a different alternative standard for willfulness that would have made "the issue in most cases turn on whether the employer sought legal advice concerning its pay practices." McLaughlin, 486 U.S. at 134. The Court

-7-

rejected this alternative standard because an employer's decision not to seek legal advice could result from negligence or a good-faith, incorrect assumption about a statute's applicability just as easily as it could result from recklessness. Id. at 135 ("[The rejected standard] would, however, permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects."). It is clear from McLaughlin, then, that an employer's failure to seek the advice of counsel does not necessarily prove recklessness.

Applying the McLaughlin standard for willfulness to the present FMLA case, Hillstrom, 354 F.3d at 33, we cannot say that the Board knew, or acted with reckless disregard of whether, it would violate the FMLA. Clearly the Board knew that the FMLA was "in the picture." McLaughlin, 486 U.S. at 132. That general knowledge, however, shows neither that the Board knew it would violate the FMLA nor that it acted with reckless disregard for whether its conduct would violate Ms. Hanger's FMLA rights. Further, although it would have been prudent for the Board to have followed Ms. Parkinson's suggestion and obtain legal advice before making the employment decision, McLaughlin makes clear that the Board's failure to do so does not demonstrate "willful" violation of the FMLA. Here, the Board of Commissioners reinstated Ms. Hanger to a position much like the one she previously held, and Ms. Hanger received the same salary and benefits that she enjoyed before she took FMLA leave. Taking the facts in the light most favorable to Ms. Hanger, it may be the case that she identified an FMLA violation. However, we find nothing to suggest recklessness on the part of the Board of Commissioners. The two year statute of limitations applies and bars Ms. Hanger's claim.

We affirm the judgment of the district court.

_____