In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3770

NATIONAL POWER CORPORATION,

*Petitioner*,

*v.*

FEDERAL AVIATION ADMINISTRATION,

*Respondent*.

Petition for Review of an Order of
the Federal Aviation Administration
No. FAA -2013-0620

ARGUED APRIL 20, 2017 — DECIDED JULY 20, 2017

Before MANION and ROVNER, *Circuit Judges*, and COLEMAN, *District Judge*.*

COLEMAN, *District Judge*. National Power Corporation ("National Power") seeks review of a Federal Aviation Administration Administrator's (the "Administrator") decision finding that National Power knowingly violated multiple

---

* The Honorable Sharon Johnson Coleman, of the United States District Court for the Northern District of Illinois, sitting by designation.

hazardous material regulations ("HMRs"), and assessing a $66,000 civil penalty against it. Because the Administrator's conclusions are supported by substantial evidence and his findings were not arbitrary and capricious or an abuse of discretion, we deny National Power's petition for review.

I.

National Power designs and manufactures custom battery packs. At issue are two types of lithium battery packs that National Power manufactured–the SM-206 battery pack ("SM-206") and the 520-libat-2 battery pack ("520-libat-2") (collectively, the "Batteries"). Both of the Batteries were regulated as U.N. 3480, class IX hazardous materials.

On May 17, 2010, Christopher Zawarus, an FAA special agent, conducted an inspection at National Power's facility in Chicago, Illinois. Mr. Zawarus discovered that between January 8 and March 25, 2010, National Power made 11 shipments, by air, of SM-206s and 520-libat-2s to customers in Santa Rosa, California and Burnaby, British Columbia, Canada (the "battery shipments"). Based on his inspection, Mr. Zawarus concluded that the battery shipments did not comply with multiple HMRs and the FAA filed a complaint, which was later amended, with the Department of Transportation. The FAA alleged violations of the following HMRs: 49 C.F.R. §§ 171.2(e), 171.22(b)1, 171.22(g)(2), 172.604(a)(1), 172.702(a), and 173.185(f).

What follows is a summary of the evidence and testimony presented at the hearing before the administrative law judge. During his inspection, Mr. Zawarus asked for documentation that the Batteries had been properly tested in accordance with the United Nations Manual of Tests and Cri-

teria ("UN Manual of Tests") or, if the Batteries had not been tested, documentation showing that the Pipeline and Hazardous Materials Safety Administration ("PHMSA") had authorized the battery shipments. National Power provided no such documentation to Mr. Zawarus, nor did it provide any at the hearing. According to Thomas Vrablik, the corporate vice president and the only witness to testify on National Power's behalf, the Batteries had not been tested at the time they were offered for shipment. Mr. Vrablik further testified that he believed, without supporting evidence, the Batteries were exempt from testing because they were similar to one of National Power's previously tested batteries.

The shipping papers for each of the battery shipments indicated that the shipments conformed to the standards set forth in packaging instruction 965 of the International Civil Aviation Organization's Technical Instructions for the Safe Transport of Dangerous Goods ("ICAO Technical Instructions"). Maria Munoz, a National Power office manager, certified each shipping paper. Mr. Zawarus's review of company records, however, revealed that, at the time she certified the shipments, Ms. Munoz's hazardous materials training was Department of Transportation specific and did not include training on the ICAO Technical Instructions. The shipping papers also listed National Power's general office number as the emergency contact number. The general office number was only monitored from 6:00 AM until 6:00 PM. Mr. Vrablik characterized the listing of the general office number as a typographical error. He further explained that the number on the shipping papers should have been Chemtrac's, one of National Power's contractors and a 24-hour responder hotline.

Mr. Zawarus testified that the battery shipments, which were offered with fiberboard box outer packaging, had been packaged according to the ICAO Technical Instructions packing group II performance standards. Because the Batteries were untested lithium batteries, however, they should have been packed according to the more stringent packing group I performance standards. The Batteries should have been shipped with metal, plastic, or plywood drums or boxes as the outer packaging.

After reviewing the parties' post-hearing briefs, the ALJ found that the FAA satisfied its burden of proof and demonstrated that National Power knowingly violated the HMRs identified in the complaint, with the exception of 49 C.F.R. § 173.185(f), and therefore assessed a civil penalty of $12,000. Both parties appealed the ALJ's decision to the Administrator. The FAA argued that the ALJ erred by applying the wrong version of section 173.185(f) and that the $12,000 sanction was inconsistent with applicable law, precedent, and FAA policy. National Power argued that it did not knowingly violate the HMRs because its violations were not deliberate, and that the $12,000 fine was excessive.

On September 30, 2016, the Administrator issued the order that is the subject of this petition for review. The Administrator rejected National Power's argument that it could not have knowingly violated the HMRs because it did not deliberately violate them. He affirmed the ALJ's finding of liability on all of the HMR violations and reversed the finding of liability on 49 C.F.R. § 172.203(f).[1] He also found that the ALJ

---

[1] The Administrator found that the FAA did not charge a violation of section 172.203(f) in its amended complaint.

erred by applying the 2014 version of section 173.185(f), which regulated the shipment of *damaged* batteries, rather than the 2010 version, which regulated to the shipment of *untested* batteries. The Administrator found that National Power did not satisfy its burden of proof to show that the Batteries were exempt from testing, and reversed the ALJ's conclusion that National Power did not violate section 173.185(f) because National Power did not have special authorization from PHMSA to ship the untested batteries. Finally, the Administrator increased the sanctions against National Power from $12,000 to $66,000 based on his application of the statutory factors governing sanctions in 49 U.S.C. § 5123(c) and the FAA penalty criteria and guidance set forth in Appendix C of FAA Order 2150.3B ("Appendix C").

National Power asks this Court to review the Administrator's conclusion that National Power knowingly violated the HMRs and the sanctions the Administrator assessed.

## II.

In reviewing the Administrator's order, we focus only on whether his findings of fact are supported by substantial evidence, and whether his conclusions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See Yetman v. Garvey*, 261 F.3d 664, 668–69 (7th Cir. 2001) (discussing the administrative review standards set forth in 5 U.S.C. § 706(2)(A) as applied to an FAA order); *see also Michael v. FDIC*, 687 F3d 337, 348 (7th Cir. 2012). The Administrator is entitled to discretion in imposing sanctions against violators; he abuses that discretion only if the sanctions are unwarranted in law or without justification in fact. *Michael*, 687 F.3d at 348 (citations omitted).

### III.

We first turn to whether the Administrator's interpretation of "knowingly" as defined by the civil penalty statute–49 U.S.C. § 5123(a)–is in accordance with the law. The Administrator found that section 5123(a) requires *only* knowledge of the facts giving rise to the violation, and that knowledge of the law is required for willful violations, as defined by 49 U.S.C. § 5124(c). National Power contends that a knowing violation requires the intent to violate the law.

The Administrator's interpretation of "knowingly" is in line with the plain language of the penalty statutes. On its face, section 5123(a) does not require a deliberate or intentional violation of the law; it only requires that a "person has actual knowledge of the facts giving rise to the [HMR] violation" or that "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." 49 U.S.C. §§ 5123(a)(1)(A), (B) (2010). Knowledge of the law, however, is necessary for a willful violation of an HMR. 49 U.S.C. § 5124(c) (2010) (requiring knowledge of the facts giving rise to a violation *and* knowledge that the conduct was unlawful). The difference between knowing and willful violations of regulations is also illustrated by the penalties proscribed by each subsection. *Compare* 5123(a) (civil penalties) *with* 5124(c) (criminal penalties). The Administrator's interpretation is also in line with Seventh Circuit and FAA precedent discussing the difference between knowing and willful standards of conduct. *See, e.g. United States v. Obiechie*, 38 F.3d 309, 315 (7th Cir. 1994); *In the Matter of: Scott H. Smalling*, FAA Order No. 94-31, 1994 WL 899663, at *2-3 (Sept. 30, 1994) (respondent was found liable for transporting fireworks even though he did not

know that they were hazardous materials and that what he did violated the applicable HMRs); *In the Matter of Riverdale Mills Corp.*, FAA Order No. 2003-10, 2003 WL 22480437, at *2 (Sept. 10, 2003) (noting that section 5123(a) only requires that the violator have knowledge of the facts giving rise to a violation and that knowledge of the law is unnecessary); *see also McLaughlin v. Richland Shoe Co.*, 468 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).

We next consider whether the Administrator abused his discretion in finding that National Power knowingly violated the HMRs. At the time of Mr. Zawarus's investigation, any batteries offered for shipment must have been tested in accordance with the UN Manual of Tests. 49 C.F.R. § 173.185(a)(1) (2010). Section 38.3 of the UN Manual of Tests requires that only *new* lithium ion batteries be tested prior to transport. A lithium ion battery is "new" if it differs from a previously tested battery by "a change of more than 0.1g or 20% by mass … to the cathode, to the anode, or to the electrolyte" or by "[a] change that would materially affect the test results." UN Manual of Tests §§ 38.3.2.1(a), (c). National Power claimed that its batters were not "new" and therefore exempt from UN testing requirements. The Administrator determined that National Power did not satisfy its burden on this affirmative defense, 14 C.F.R. § 13.224(c), because it failed to show that the Batteries qualified for this exemption. This conclusion is supported by the record. At the hearing, Mr. Vrablik admitted that all of the Batteries were untested prior to transport. He testified that he believed SM 206 was exempt from testing because it was of a similar construction to the SM 201-6, one of National Power's previously tested batteries. National Power, however, did not introduce evidence supporting this contention. Further, National Power

failed to offer any evidence or testimony comparing 520-libat-2 to SM 201-6 or any other previously tested battery. Accordingly, the Administrator found that National Power violated 49 C.F.R. § 173.185(f) (2010) because National Power was aware of the fact that Batteries were untested and because Mr. Vrablik admitted that National Power did not have special permission from PHMSA for the battery shipments. The Administrator's finding of liability was not an abuse of discretion.

The Administrator correctly affirmed the ALJ's finding of liability for violations of section 171.2(e) and section 171.22(b)(1). These sections require that hazardous material be shipped in accordance with the ICAO Technical Instructions packaging standards. National Power was aware that the Batteries were untested and that untested lithium-ion batteries must be packaged using packing group I performance standards. National Power, however, packed the Batteries using packing group II performance standards. The ALJ found that National Power violated sections 171.22(g)(2) and 172.702(a), and the Administrator appropriately affirmed. Sections 171.22(g)(2) and 172.702(a) require that the people involved in shipping hazardous materials be trained in the international standards used. Here, Ms. Munoz certified that the battery shipments complied with the ICAO Technical Instructions. Ms. Munoz, however, had not been trained on the ICAO Technical Instructions.

The Administrator did not abuse his discretion in affirming the ALJ's finding of liability on section 172.604(a)(1), which requires shippers to list an emergency response number on shipping papers. The emergency number must be monitored at all times while the hazardous material is in

transit. National Power contends that it was not aware of the fact that it had listed the incorrect number on the shipping papers for the battery shipments, therefore it could not have knowingly violated the HMR. Section 5123(a)(1)(B), however, imputes knowledge of the facts giving rise to a violation if "a reasonable person acting in the circumstances and exercising reasonable care would have that knowledge." *In the Matter of Interstate Chem. Co.*, FAA Order. No. 2002-29, 2002 WL 31957045, at *7 (Dec. 2, 2002). In other words, section 5123(a)(1)(B) "requires inquiry and treats a person as possessing whatever knowledge inquiry would have produced." *Id.* (quoting *Contract Courier Servs., Inc. v. Research & Special Programs Admin.*, 924 F.2d 112, 114 (7th Cir. 1991)). A reasonable person would have reviewed the number listed on the shipping papers and discovered that it was incorrect. National Power did not introduce any evidence that it performed even a cursory review. We find that a reasonable person in National Power's position would have been aware that the emergency number was improper, therefore National Power was aware of the facts that gave rise to this violation.

Finally, we address whether the Administrator's $66,000 sanction was an abuse of discretion. During this highly deferential review, we must determine whether the Administrator's sanction, which falls within statutory limitations, is rationally related to National Power's offenses. *Monieson v. CFTC*, 996 F.2d 852, 858 (7th Cir. 1993); *Michael*, 687 F.3d at 348. National Power's argument that the assessment of a $66,000 penalty was arbitrary and capricious is fatally flawed. National Power contends that the record clearly shows that Mr. Zawarus arbitrarily determined the sanction amount the FAA requested. National Power, however, ig-

nores the fact that the Administrator, not Mr. Zawarus, imposed the penalty. We focus our review on the Administrator's considerations,[2] not Mr. Zawarus's.

At the time of National Power's violations, the FAA was authorized to impose sanctions between $250 and $50,000 per HMR violation. 49 U.S.C. §§ 5123(a)(1), (3) (2010). In assessing sanctions, the Administrator was to consider factors such as the nature, circumstances, and gravity of the violation, the violator's degree of culpability and history of violations, and other matters that justice required. 49 U.S.C. § 5123(c) (2010). The Administrator was also to look to Appendix C for guidance.

Pursuant to Appendix C, the Administrator determined that this case had a minimum to moderate "weight," or severity, based on the material that was being shipped, National Power's high degree of culpability as a battery manufacturer, and National Power's unintentional violations of the HMRs. Next, the Administrator consulted the penalty matrix in Appendix C for penalties related to declared shipments and determined that National Power was subject to the penalties that applied to entities that regularly offered, accepted, or transported hazardous materials. These penalties ranged between $1,000 and $5,500. The Administrator

---

[2] Prior to engaging in his analysis, the Administrator identified multiple errors the ALJ made. The ALJ's chief error was his decision to impose a $2,000 fine encompassing all 11 violations of a single HMR. (i.e. ($2,000 per 11 violations of a single HMR) x (6 violated HMRs) = $12,000 penalty). The Administrator, in applying Appendix C and considering 49 U.S.C. § 5123(a)(4), determined that it was appropriate to apply a sanction amount for each of the 11 battery shipments because they constituted separate shipments as they all occurred under different airway bills.

split the range into thirds, each representing a minimum, moderate, or maximum severity. The ranges were $1,000-2,500, $2,501-4,000, and $4,000-5,500, respectively. Because he applied a minimum to moderate weight to this case, he determined that the penalty range for each of National Power's HMR violations was to be between $1,000 and $4,000. The Administrator also categorized the six HMRs that National Power violated into four groups: packing, training, emergency response, and "other." The Administrator, based on FAA precedent, further found that National Power's corrective actions were not mitigating factors because they did not exceed the minimum legal requirements. He also chose not to reduce the penalty he assessed because National Power failed to demonstrate an inability to pay a fine.

The Administrator determined that the FAA's request that he impose a $66,000 fine would result in a $1,500 penalty per violation group, per shipment.[3] He determined that this average $1,500 penalty per violation group was reasonable based on his analysis of this case and FAA guidance. The Administrator considered numerous factors when it determined the appropriate penalty. Accordingly, we find that the penalty, which was within statutory limits, was rationally related to National Power's multiple offenses and that the penalty imposed was not arbitrary and capricious or an abuse of discretion.[4]

---

[3] ($1,500 per violation group) x (4 violation groups) x (11 shipments) = $66,000.

[4] National Power cites to a Wikipedia article about Judge Dredd to claim that the penalty imposed was arbitrary and capricious and as if "a police officer arrested a bank robber, summarily declared the robber's guilt and sentenced him to prison time … ." Judge Dredd, both in the pages of

For all of these reasons, we deny National Power's petition for review and affirm the Administrator's order in all respects.

---

comic books and on the screen, is a "street judge" in a dystopian future who is empowered to summarily arrest, convict, sentence, and execute offenders. *See* https://en.wikipedia.org/wiki/Judge_Dredd (visited July 18, 2017). It is obvious to us that the Administrator did not engage in the type of justice Judge Dredd embodies. The Administrator did not arbitrarily declare, "I am the law!" and hand down a penalty without considering all of the relevant factors.