[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11049

_____

D.C. Docket No. 1:10-cv-21282-TEB

MARIA TERESA DAVILA,

Plaintiff - Appellant,

versus

MARIA CLAUDIA MENENDEZ,
RUDOLFO MENENDEZ,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 10, 2013)

Before TJOFLAT and PRYOR, Circuit Judges, and ROTHSTEIN,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents two issues: first, whether a jury should have decided if

an employer willfully violated federal and state minimum wage laws after a former

_____

[*]Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of
Washington, sitting by designation.

employee introduced evidence, viewed in the light most favorable to the former employee, that the employer was aware of and disregarded those laws, sometimes paid the former employee in cash, failed to record her hours of work, and made comments about her status as an alien; and second, whether the district court may deny an employee's request for liquidated damages before a jury decides whether her employer willfully violated federal and state minimum wage laws. Maria Teresa Davila appeals a judgment that Maria Claudia and Rudolfo Menendez did not willfully violate federal minimum wage laws, 29 U.S.C. § 206(a), and the minimum wage laws of Florida, Fla. Const. Art. 10, § 24(e), and that Davila was not entitled to liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216. Davila argues that the Menendezes failed to pay her the minimum wage under federal and state law while she served as the nanny for their child from 2004 until 2010. At trial, the jury found that the Menendezes violated the minimum wage laws and owed Davila unpaid wages, but the district court granted a judgment as a matter of law in favor of the Menendezes and against Davila's claim that they willfully violated the minimum wage laws. If the jury had found that the Menendezes willfully violated the minimum wage laws, the time for which Davila could have recovered unpaid wages would have been extended from four years to five years. See Fla. Const. Art. 10, § 24(e). Davila also argues that the district court erred when it denied her motion for liquidated damages. Because Davila

2

introduced sufficient evidence for a reasonable jury to find that the Menendezes willfully violated the minimum wage laws and because the district court cannot rule on Davila's motion for liquidated damages before the jury decides whether the Menendezes willfully violated the minimum wage laws, we vacate and remand for further proceedings.

## I. BACKGROUND

In 2004, the Menendezes hired Davila as a nanny for their five-month-old son. The Menendezes expected Davila to dress the child each morning, cook his breakfast, and prepare him to leave the family's one-bedroom apartment and each evening to cook the child's dinner and put him to bed. While the Menendezes lived in the small apartment, Davila arrived for work early every weekday morning, left in the evenings after she put the child to bed, and babysat occasionally on Friday and Saturday evenings. When the Menendezes later moved into a two-bedroom apartment, Davila lived with the Menendezes from Sunday evening through Friday afternoon. When she first started to work for the Menendezes, Davila requested a salary of $350 a week, and the Menendezes agreed to pay that rate. Approximately two-and-a-half years later, the Menendezes increased Davila's salary to $400 a week.

In February 2008, Davila visited her daughter in Canada. Davila remained in Canada for eight months and obtained status as a legal resident to enroll for

3

Medicare in Canada.  In October 2008, Davila returned to the Menendez home.  In March 2010, the Menendezes fired Davila.

In April 2010, Davila filed a complaint against the Menendezes for violating the federal minimum wage laws.  Davila alleged that she had "worked an average of 100 hours a week between . . . July 28, 2004 through . . . February 14, 2008," and been "paid $3.50 per hour for all hours of work."  Davila also alleged that she had "worked an average of 75 hours a week between . . . October 10, 2008 through . . . March 26, 2010," and been "paid $4.00 per hour for all hours of work."  And Davila alleged that the Menendezes had "willfully and intentionally refused to pay . . . or post[] any notice . . . of her rights to minimum wages."  In an amended complaint, Davila also alleged that the Menendezes had violated the minimum wage provision of the Florida Constitution.  Davila sought "double damages and reasonable attorney fees" or "as much as allowed" under federal law and the Florida Constitution, "whichever is greater."

At trial, the Menendezes and Davila disagreed about the number of hours that she had worked and her duties in the Menendez home.  The Menendezes testified that Davila had worked an average of 38 hours each week, but Davila testified that she had worked 100 hours each week before she left for Canada and 70 hours each week between the time that she returned to the United States and her termination.  The Menendezes testified that Davila had arrived voluntarily on

4

Sunday evenings because she did not have a permanent residence for weekdays and began her work early on Monday morning, but Davila testified that the Menendezes had required that she arrive on Sunday evening. The Menendezes stated that Davila had no duties after the child left for school or after she put the child to bed, but Davila testified that she had worked all but four hours at night when the child slept. Davila testified that, during the day, she had cleaned the Menendezes' apartment, prepared meals, and run errands for Claudia Menendez and, at night, she had slept in the child's bedroom. Claudia testified that maids, not Davila, had been responsible for cleaning the apartment. Claudia also testified that she had vacationed with her son at least twice a year in Colombia and that their absence had temporarily relieved Davila from her duties.

The Menendezes testified that Davila had been paid according to the minimum wage laws, and that Davila had never complained about her compensation. The Menendezes further testified that they had hired Davila at the rate of $350 a week, paid her when the child had been on vacation with Claudia, gave Davila money for living expenses and to pay taxes, paid medical expenses incurred by Davila's relative in Colombia, paid Davila's credit card bills while she was in Canada, and paid for her airplane ticket to return to the United States. Rudolfo Menendez testified that he "[had] an idea of what minimum wage was," that the rate "might have been about $6 an hour," and that he "always thought that

5

[the family had] pa[id] [Davila] way above minimum wage." Rudolfo testified that he had required Davila to file tax returns, but he had not "inquire[d] whether [his] payments to Ms. Davila were in sync with the minimum wage laws," and "didn't know [that he was] supposed" to file W-2 forms for Davila. Rudolfo also testified that he had recommended his certified public accountant to Davila and that the accountant "would [not] risk his license to do anything unethical."

Davila testified that she would have continued to work for the Menendezes had they not fired her, although she thought they were dishonest. Davila testified that, during her first meeting with the Menendezes, Rudolfo questioned why an "illegal" would charge $350 a week, mentioned several times that he was "with the government," and told Davila that she "should not be charging that much." Davila also testified that she "never received again $400 [a week]" after she returned from Canada. Davila stated that the Menendezes cheated on their taxes and used their accountant to report falsely Davila's income. Davila also testified that, during a trip Davila took to a hospital for a job-related accident, Claudia told Davila not to mention that she was an employee of the Menendezes because they had not provided health insurance for her.

In their cross-examination of Davila, the Menendezes introduced documents that Davila provided to the hospital to obtain free medical care: a copy of her 2008 tax return, which understated her income; a power bill that listed the Menendezes'

6

address; and a letter from Claudia stating that she was "in charge of all the living expenses for . . . Davila." The Menendezes also introduced canceled checks to establish that, after Davila returned from Canada, she was paid $520, $350, and $400 on three separate weeks in December 2009, and $1,000 for one week in February 2010. Davila acknowledged that the Menendezes had helped her pay for her plane ticket from Canada, but Davila testified that most of the large checks had been advances on her weekly salary. And Davila further acknowledged that she had used Claudia's debit card to pay for household expenses and to withdraw cash to pay her weekly salary. The Menendezes also submitted copies of tax returns that Davila had filed for tax years 2009 and 2010 in which she had substantially understated her income.

At the close of all the evidence, the Menendezes "move[d] for a directed verdict on the issue of intentional reckless or willful behavior on the part of the defendants," and the district court granted the motion. The district court ruled that the "testimony . . . that [the Menendezes] were aware of the requirements of paying a minimum wage, . . . in and of itself, under the circumstances in this case, . . . [does not] give rise to a jury question . . . of whether they intentionally violated the minimum wage requirement or showed reckless disregard." The district court concluded that the Menendezes' "failure to go and investigate further is [not] a

requirement [nor does it] give[] rise, in and of itself, to creating a jury question here" about willfulness.

The jury returned a verdict in favor of Davila and found that the Menendezes owed Davila $33,025 in unpaid minimum wages.  Davila moved for liquidated damages, but the district court denied Davila's motion.  The district court ruled that the Menendezes "acted in good faith in compensating [Davila] for all hours worked in their employment," and the district court "exercise[d] its discretion in declining to award punitive damages."

## II. STANDARDS OF REVIEW

We review <u>de novo</u> the judgment as a matter of law that the Menendezes did not willfully violate the minimum wage laws, and we construe the evidence in the light most favorable to Davila.  See <u>Thorne v. All Restoration Servs., Inc.</u>, 448 F.3d 1264, 1266 (11th Cir. 2006).  "[W]hether [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [Act] [is] mixed questions of fact and law."  <u>Dybach v. Fla. Dep't of Corr.</u>, 942 F.2d 1562, 1566 (11th Cir. 1991).  "We review such questions <u>de novo</u> to the extent they involve application of legal principles to established facts, and for clear error to the extent they involve an inquiry that is essentially factual."  <u>Id.</u>

## III. DISCUSSION

We divide our discussion in two parts.  First, we explain why the district court erred when it granted a judgment as a matter of law against Davila on the issue of willfulness.  Second, we explain why the district court must reconsider its decision that Davila is not entitled to liquidated damages.

*A. The District Court Erred When It Entered a Judgment as a Matter of Law Against Davila on the Issue of Willfulness.*

A district court may enter a judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue.  Fed. R. Civ. P. 50(a); see Thorne, 448 F.3d at 1266.  The district court must view the evidence in the light most favorable to the non-moving party and must refrain from "decid[ing] the credibility of witnesses []or weigh[ing] the evidence." Mich. Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915, 921 (11th Cir. 1998). Where there exists a "substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, [a] motion [for a judgment as a matter of law] must be denied." Christopher v. Florida, 449 F.3d 1360, 1364 (11th Cir. 2006) (internal quotation marks omitted); see also EEOC v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1250 (11th Cir. 1997) (holding that a judgment as a matter of law "can be [entered] only when the evidence favoring the [movant] is so one-sided as to be of overwhelming effect").

9

Davila argues that the Menendezes willfully violated the minimum hourly wage laws of Florida and that their willful violation extended by one year the time for which she can recover unpaid wages. The Florida Constitution provides that "[a]ctions to enforce [the minimum wage laws of Florida] . . . shall be subject to a statute of limitations of four years or, in the case of willful violations, five years." Fla. Const. Art. 10, § 24(e). Although section 24 does not define the term "willful," it provides that "case law, administrative interpretations, and other guiding standards developed under the federal [Fair Labor Standards Act] shall guide the construction of this amendment." Id. § 24(f).

An employer willfully violates the Act if he should inquire as to whether his actions violate the Act, but fails to do so. The Supreme Court held in McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S. Ct. 1677 (1988), that a willful violation of the Act occurs when an employer either knows that his conduct is prohibited by or "show[s] reckless disregard for" the minimum wage laws, id. at 133, 108 S. Ct. at 1681. See 29 C.F.R. § 578.3(c)(1). An employer knowingly violates the Act if he disregards the minimum wage laws deliberately or intentionally, McLaughlin, 486 U.S. at 133, 108 S. Ct. at 1681, such as by ignoring "advice from a responsible official . . . that the conduct in question is not lawful," 29 C.F.R. § 578.3(c)(2). An employer acts with reckless disregard for the Act if the employer's conduct is more than "merely negligent," McLaughlin, 486 U.S. at 133, 108 S. Ct. at 1681, and is

10

blameworthy "if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry," 29 C.F.R. § 578.3(c)(3); see 5 C.F.R. § 551.104.  In other words, an employer does not commit a willful violation if he "acts unreasonably, but not recklessly, in determining [his] legal obligation" under the Act.  McLaughlin, 486 U.S. at 135 n.13, 108 S. Ct. at 1682 n.13.  The burden rests with the employee to "prove by a preponderance of the evidence" that her employer acted willfully. Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162–63 (11th Cir. 2008); see also Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1274 (11th Cir. 2008).

The district court erred when it entered a judgment as a matter of law that the Menendezes did not willfully violate the minimum wage laws.  Davila introduced evidence from which a reasonable jury could have found that the Menendezes willfully violated the minimum wage laws.  See Alvarez Perez, 515 F.3d at 1162–63.  Davila elicited from the Menendezes that they knew of the hourly wage laws, but failed to investigate whether they had complied with those laws.  Davila testified that the Menendezes did not sign a contract with Davila, did not record her working hours, and paid her in cash.  And Davila further testified that Rudolfo made threatening comments about her alien status and his work for the government.  Despite the Menendezes' assertions that they were ignorant of

their obligations under the minimum wage laws, a reasonable jury could have drawn a contrary inference from the evidence, and the district court erred when it refused to submit the issue of willfulness to the jury.  Davila is entitled to a new trial before a jury to determine whether the Menendezes willfully violated the minimum wage laws.

### B. The District Court Must Reconsider Whether Davila Is Entitled to Liquidated Damages.

Because Davila is entitled to a new jury trial to determine whether the Menendezes willfully violated federal and state minimum wage laws, the district court must reconsider whether Davila is entitled to liquidated damages.  An employee ordinarily is entitled to liquidated damages if her employer violated the minimum wage laws.  By statute, an award of liquidated damages equals the compensatory damages assessed by the jury.  29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the Fair Labor Standards Act] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages . . . in an additional equal amount as liquidated damages.").  But the Act establishes the following good-faith defense and leaves to the discretion of the district court whether to award liquidated damages:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act . . . the court may, in its

12

sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [section 216].

Id. § 260. "To satisfy the subjective 'good faith' component, the employer has the burden of proving that it had an honest intention to ascertain what the Act requires and to act in accordance with it." Dybach, 942 F.2d at 1566 (alterations, citations, and internal quotation marks omitted). If the employer fails to prove that he acted with both subjective and objective good faith, "liquidated damages are mandatory." Id. at 1567.

Before making a determination as to Davila's entitlement to liquidated damages, the district court was required to await the finding of the jury about willfulness. "The willfulness or good faith question [must be] answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the [district court] to determine whether to award liquidated damages." Alvarez Perez, 515 F.3d at 1162. If the jury finds that the Menendezes acted willfully, then their good-faith defense would necessarily fail, and Davila would be entitled to liquidated damages. See id. at 1166 ("[I]n [a Fair Labor Standards Act] case a jury's finding in deciding the limitations period question that the employer acted willfully precludes the court from finding that the employer acted in good faith when it decides the liquidated damages question."). But if the jury finds that the Menendezes did not willfully violate federal and state minimum wage laws, that determination would not necessarily mean that they acted in good

13

faith. "Because the burden of proof is placed differently [for issues of willfulness and good faith], a finding that willfulness was not present may co-exist peacefully with a finding that good faith was not present." Rodriguez, 518 F.3d at 1274. The Menendezes admittedly did not inquire about their obligations under the hourly wage laws, and the district court could infer that the Menendezes lacked "reasonable grounds for believing that [their] conduct comported with the Act." Dybach, 942 F.2d at 1567.

## IV. CONCLUSION

We **VACATE** the judgment that the Menendezes did not willfully violate the minimum wage laws and that Davila was not entitled to liquidated damages, and we **REMAND** for further proceedings consistent with this opinion.