**PRECEDENTIAL**
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3895 & 16-2214
_____

MICHAEL SOURYAVONG; EDWIN VELEZ

v.

LACKAWANNA COUNTY;
LACKAWANNA COUNTY DEPUTY SHERIFFS
ASSOCIATION*

(D.C. No. 3-13-cv-01534)


NELSON ROLON

v.

LACKAWANNA COUNTY;
LACKAWANNA COUNTY DEPUTY SHERIFFS
ASSOCIATION[*]

(D.C. No. 3-13-cv-01581)

Michael Souryavong and Nelson Rolon,
Appellants

---

[*] Dismissed pursuant to Clerk's Order dated 7/29/17

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Nos. 3-13-cv-01534 & 3-13-cv-01581)
District Judge:  Hon. A. Richard Caputo
_____

Argued March 28, 2017
_____

Before:  AMBRO, VANASKIE, and RESTREPO, *Circuit Judges*

(Filed: September 20, 2017)

Cynthia L. Pollick, Esq.      [ARGUED]
The Employment Law Firm
363 Laurel Street
Pittston, PA 18640
    *Counsel for Appellants*

Harry T. Coleman, Esq.      [ARGUED]
41 North Main Street
Suite 316
Carbondale, PA 18407
    *Counsel for Appellee*

_____

OPINION
_____

VANASKIE, *Circuit Judge.*

This employee-overtime appeal raises questions as to the nature of the evidence that is sufficient to create a jury question on the purported "willfulness" of an employer's non-payment of overtime. The question matters because a finding of willfulness expands the limitations period for claims under the Fair Labor Standards Act ("FLSA"), in effect permitting a plaintiff to receive a larger award. Here only the willfulness question was contested—Appellee Lackawanna County conceded the basic overtime violations—and at trial Appellants Michael Souryavong and Nelson Rolon presented some evidence on the question but not enough to avoid a directed verdict in the County's favor. We find no error in the District Court's decision because the evidence presented did not suggest the County was subjectively aware of the FLSA problem at the time of the violations, at least with respect to Souryavong and Rolon. Additionally, Souryavong and Rolon challenge the District Court's calculation of attorney's fees, but we find that decision appropriate as well. We will affirm.

**I.**

Souryavong and Rolon were among a class of individuals working in two separate part-time capacities for Lackawanna County. The County apparently tracked and paid these employees for each of their individual jobs, but in 2011 the County became aware that it had failed to aggregate the hours in both jobs, resulting in a failure to pay the overtime rate for hours beyond 40 hours per pay period.

In June 2013, Souryavong, Rolon, and Edwin Velez filed complaints in the Middle District of Pennsylvania alleging several claims, including the only one relevant here, a

3

claim against Lackawanna County for non-payment of overtime in violation of the FLSA, 29 U.S.C. § 207(a)(1). By 2015, it was undisputed that the County had violated the FLSA's overtime provisions at various times from 2008 to 2012. Still disputed, however, was whether the County's violation was "willful."

In November 2015, the case went to trial on the willfulness question and damages. At trial the employees presented evidence that included (1) documents showing the County's failure to pay proper overtime, a failure that apparently lasted into January 2012 for Velez; (2) testimony from County Chief Financial Officer Thomas Durkin stating that "from 2007 onward" the County was generally "aware" of its obligations under the FLSA (App. 266); (3) testimony from County Human Resources Director Nancy Pearson stating that she was also generally aware of the FLSA and its requirements; and (4) a March 28, 2011 email from Pearson, sent to two other county officials, with the subject line reading "County wage and hour issues," and the body of the email discussing certain county employees who were working "second jobs." (App. 152.) Pearson's email highlighted two employees, one of whom was Edwin Velez, as examples of the issue, and she noted how these employees had each worked more than 40 hours per week by serving the County in two part-time capacities: "Velez works 50 plus hours a [two-week] pay period for the booking center and up to sixty hours a pay period for the sheriff's department. This sampling is not infrequent, irregular or scattered." (App. 152.) The email concluded by raising the prospect that these employees might file labor grievances:

> [A]ll employees who work for the County should only be working in one position. *That brings us*

4

*to the next point on dealing with those individuals who may file a grievance for back pay for overtime for being paid straight time.* Who would you like involved in a further conversation about this matter so this can be resolved?

(App. 152 (emphasis added).)

At the close of the employees' case, the County made an oral motion for entry of judgment as a matter of law, arguing the employees' evidence was insufficient to create a jury question on willfulness. The Court immediately held oral argument on the motion, and the employees' Attorney Cynthia Pollick argued that their evidence was sufficient. In support, she cited (1) "testimony from Nancy Pearson" and (2) "the fact that [the County] did not correct" the overtime issue over the course of "four years" of violations. (App. 9-10.) At the close of argument, the District Judge ruled from the bench. He stated the employees' evidence did not "measure up," and granted the County's motion and entered judgment in its favor on the willfulness question. (App. 21.)

The damages question still remained, the case went to the jury, and it awarded $5,588.30. The Court then addressed several post-trial motions, two of which are relevant here. First, the plaintiffs moved for liquidated damages under 29 U.S.C. § 216.[1] The County opposed the motion and argued

---

[1] The effect of a liquidated damages award is to double the unpaid overtime compensation. In this regard, 29 U.S.C. § 216 provides that "[a]ny employer who violates the provisions of section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime

liquidated damages were inappropriate because the County had operated in "good faith" and its FLSA violations were inadvertent. *See* 29 U.S.C. § 260 (stating liquidated damages shall not be awarded if an employer operated in "good faith" and "had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]"). The employees disagreed, and argued the County's violation was "intentional." (App. 83.) The Court sided with the employees and granted the motion, but rather than grounding its ruling on "intentionality," as the employees had argued that it should, the court reasoned in its memorandum opinion that the County had presented "no evidence" to show that it had taken any "affirmative steps to ascertain the FLSA's requirements" prior to the at-issue overtime violations, or that the County had "acted in 'good faith.'" (App. 84.) In support of this determination, the District Court correctly followed *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir. 1991), in which we held that an employer's failure to take "affirmative steps to ascertain the legality of its pay practices" mandates an award of liquidated damages.

In another motion, the employees moved for attorney's fees and costs, requesting an award of $166,162.50. They based their request on a fee rate for Attorney Pollick's work of $400 per hour, 367.6 hours of legal work, and additional legal-assistant time and costs. The Court found the proper rate for Attorney Pollick to be significantly lower—$250 per hour—and that only 278.2 hours were compensable, for a lodestar of $69,550.00. It then deviated downward from

---

compensation . . . and in an additional equal amount as liquidated damages."

6

the lodestar to a final award of $55,852.85—approximately one-third of what the employees initially requested—after an analysis of the factors laid out in *Hensley v. Eckart*, 461 U.S. 424, 430 n.3, 434-37 (1983). The court recorded its analysis in a meticulous and thorough opinion.

This appeal followed, with Souryavong and Rolon filing a joint notice of appeal. Velez—Souryavong and Rolon's co-plaintiff in the District Court—did not join Souryavong and Rolon's notice of appeal and did not file his own. Velez is therefore not a party to this appeal.[2]

## II.

The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

## III.

Souryavong and Rolon's appeal presents two issues: (1) whether the District Court was right to grant judgment as a matter of law on the willfulness question; and (2) whether the Court erred in its calculation of attorney's fees.

---

[2] The Lackawanna County Sheriffs Association was dismissed from the appeal after they and the employees resolved the employees' claims through successful mediation.

**A.**

On the issue of whether the District Court should have entered judgment as a matter of law on the FLSA "willfulness" question, we apply *de novo* review. *Brownstein v. Lindsay*, 742 F.3d 55, 63 (3d Cir. 2014). Although willfulness is a "question of fact," *Bianchi Trison Corp. v. Chao*, 409 F.3d 196, 208 (3d Cir. 2005), a district court may take the question from the jury and grant a Rule 50(a) motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the non-moving party, *Rego v. ARC Water Treatment Co.*, 181 F.3d 396, 400 (3d Cir. 1999).

Under the FLSA, whether an employer "willfully" violates the statute is of import because such a finding extends the FLSA's limitations period from two years to three, bringing another year of lost pay within the scope of the worker's claim. 29 U.S.C. § 255(a). The Supreme Court defines "willfulness" to include situations when the employer, at the time of its FLSA violation, either "knew" its conduct was prohibited by the FLSA or "showed reckless disregard for the matter." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Acting only "unreasonably" is insufficient—some degree of actual awareness is necessary. *Id.* at 135 n.13.

Here, no pre-violation awareness of the two-job-FLSA problem was shown by the evidence that Souryavong and Rolon presented at trial. They argue otherwise based on: a series of overtime violations that continued into January 2012 with respect to Velez; Nancy Pearson's raising of the overtime issue with other County employees in her March 28, 2011 email; and the County's general awareness of the FLSA's requirements at all relevant times, as indicated by Durkin's testimony. But these three bits of evidence do nothing to show

8

that the County was (i) specifically aware of the two-job FLSA overtime problem (ii) as it related to Souryavong and Rolon (iii) prior to the dates of the violations. Durkin's testimony, for example, is insufficient because it does not get at the two-job problem—he only testified to an awareness of the FLSA on a basic level. Willful FLSA violations require a more specific awareness of the legal issue. *See Flores v. City of San Gabriel*, 824 F.3d 890, 896, 905-07 (9th Cir. 2016) (identifying a jury question on FLSA "willfulness" where a city misclassified employee pay for nine years despite familiarity with the type of problem), *cert. denied*, 137 S. Ct. 2117 (2017). Also, Pearson's testimony and the timing of Velez's overtime violations do not show the necessary order of events for a willfulness finding as to Souryavong and Rolon. Although Velez's overtime violations post-date Pearson's email, supporting an argument that the County's violations as to him were willful, the same is not true for Souryavong and Rolon, who are the only parties for whom we may order relief because they are the only appellants. For them, the parties have highlighted no evidence suggesting the County's violations with their pay continued after Pearson's email was sent.

Alternatively, even if Pearson's email pre-dates some of the County's FLSA violations as to Souryavong and Rolon, two other factors still indicate the District Court's ruling is correct. First, decisions from our sister circuits indicate that an FLSA violation must have a degree of egregiousness that is lacking in Lackawanna County's case. For example, a jury question on willfulness is present when a city is well aware of the FLSA's strictures, sets up a bureaucracy to classify pay and benefits and properly calculate overtime, and then despite all that allows a misclassification of a monthly payment to continue *for nine years*. *Id.* Similarly, there is a jury question

9

on willfulness if a family fails to pay a nanny a minimum wage, family testimony indicates the family "knew" about minimum wage laws, and the nanny's testimony was that the family required her to work twice as many hours as the family claimed, did not provide a contract or record her working hours, and instructed her to lie about her employment. *Davila v. Menendez*, 717 F.3d 1179, 1182-83, 1185 (11th Cir. 2013). Here, nothing indicates Lackawanna County's violation could be attributed to any similar level of recklessness or ill will. The County apparently addressed the two-job FLSA problem within a year of the date of Pearson's email—much sooner than the nine years in *Flores*—and while the County's bureaucratic failure that caused the time-tracking snafu is perhaps an example of government morass, the evidence shows nothing akin to the manipulation and concealment found in the facts of *Davila*.

Second, even if Pearson's email shows the County was aware of an overtime problem generally at the time of the Souryavong and Rolon violations, it does not indicate an awareness of an FLSA overtime problem specifically. A plaintiff must put forward at least some evidence of the employer's awareness of a violation of the FLSA overtime mandate. *See Flores*, 824 F.3d at 907 (Owens, J., concurring) (emphasizing that Supreme Court "willfulness" precedents require a showing of some degree of subjective actual awareness of an FLSA violation and that mere negligence will not do). Here, Pearson's email only references "wage and hour issues," and never mentions the FLSA or any other law—state or federal. Pearson's statement that the County's conduct gave rise to the risk that an employee "may file a grievance for backpay for overtime" does not belie an awareness of an FLSA problem. Without something connecting the email to the

10

FLSA, Pearson's email is not enough on its own to create a jury question as to FLSA willfulness. *See Oakes v. Pennsylvania*, 871 F. Supp. 797, 801 (M.D. Pa. 1995) (finding no jury question on the willfulness of a meal-break FLSA violation in spite of employees previously raising a similar meal-break issue, because the previous issue was raised only in the context of a collective-bargaining agreement).

Finally, Souryavong and Rolon argue the District Court's holding on liquidated damages somehow requires us to hold in their favor on willfulness. Their argument is that the District Court recognized that the County acted "intentionally" when it ruled in the employees' favor on the liquidated-damages motion. (Appellants' Br. at 9.) But the District Court grounded its ruling in a lack of evidence going to the County's good faith attempts at FLSA compliance. A lack of evidence going to good faith is not the same as evidence in support of intentionality.

In sum, the District Court was correct: the evidence presented at trial did not measure up, and judgment as a matter of law was appropriate.

**B.**

The second issue in this case is the award of attorney's fees. We review the "reasonableness" of a district court's award of attorney's fees for abuse of discretion, *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d Cir. 2011), but exercise plenary review over its selection of legal standards for determination of a fee award, *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1034-35 (3d Cir. 1996).

11

Attorney Pollick makes three arguments that her fee award should have been higher. Her first argument as we understand it is that the District Court erred as a matter of law in reducing the fee award below the lodestar amount. Specifically, she argues that use of the *Johnson* factors was prohibited by *Perdue v. Kenny A.*, 559 U.S. 542 (2010). We disagree.

Decades ago, courts calculated attorneys' fees in divergent ways, with some relying exclusively on twelve factors laid out in the seminal Fifth Circuit decision, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and others applying the lodestar method pioneered by this Court in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). In 1983 the *Johnson* factors were given a boost when the Supreme Court explicitly stated in *Hensley* that district courts "may consider" the *Johnson* factors. 461 U.S. at 434 n.9 (1983). Among those factors listed by the Court was "the amount involved and the results obtained." *Id.* at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19).

Eventually, however, our lodestar approach "achieved dominance," and in the 2010 case *Perdue v. Kenny A.* the Supreme Court spoke glowingly of the lodestar approach and its advantages as compared to the *Johnson* factors. 559 U.S. at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002)). The Court observed that the lodestar method has "several important virtues," most specifically that "the lodestar method is readily administrable" and, "unlike the *Johnson* approach," is objective in that it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 551-52.

Yet the Court in *Perdue* still left room for *Johnson* factors to play a role in the attorney fee award decision: First, a district court should calculate the lodestar—"the number of hours worked multiplied by the prevailing hourly rate"—which carries a "strong presumption" of "reasonable[ness]" and "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 543-44, 546, 552. After calculating the lodestar, the court may deviate from it, but only in the "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 543-44 (emphasis added). Thus, the consideration of *Johnson* "factors" is permissible on the back end of a lodestar's calculation, as long as they are not already "subsumed in the lodestar calculation." *Id.* at 553.

Here, the District Court followed the proper lodestar-then-*Johnson* factors process almost to a "T": it calculated the lodestar, identified the *Johnson* factors it thought not subsumed in the lodestar, analyzed those factors in light of the facts of this case, and then decided that a downward deviation from the lodestar was justified. Pollick argues this downward deviation was impermissible because *Perdue* overruled *Hensley*'s blessing of the *Johnson* factors, and any post-*Perdue* reliance on the *Johnson* factors is impermissible, at least as it relates to any tinkering with the lodestar. This is incorrect for at least four reasons. First, *Hensley* explicitly states that use of the *Johnson* factors is permissible, and *Hensley* remains binding precedent because the Supreme Court has not said otherwise—its "decisions remain binding precedent until [the justices] see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continued vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam) (quoting *Hohn*

13

*v. United States*, 524 U.S. 236, 252-53 (1998)). Second, there should be no doubt that *Perdue* preserved the availability of the *Johnson* factors because the *Perdue* decision explicitly states that "factor[s]" may still justify a deviation from the lodestar. 559 U.S. at 554. Third, *Perdue*, like *Hensley*, explicitly permits consideration of *Johnson*'s eighth factor—"the results obtained." *Hensley*, 461 U.S. at 434. And fourth, the *Perdue* Court's concerns were related to a poorly reasoned upward deviation from the lodestar, not a well-reasoned downward deviation, as was the case here. The *Perdue* district court's untenable fee award was 75% higher than the lodestar and was supported by a bare-bones reference to "extraordinary" circumstances. 559 U.S. at 548, 557-60. Here, by comparison, the District Court deviated downward and provided ample reasoning in a thorough and lengthy opinion.[3]

The District Court applied the right law in its fee analysis. And it did not abuse its discretion in determining that the relatively modest damage award justified a reduction in the lodestar result.

Pollick's two remaining arguments focus on the reasonableness of the District Court's fee determinations, and both arguments fall within the abuse-of-discretion standard of review. First, she argues the District Court should have accepted her proposed $400-per-hour rate instead of the $250-per-hour rate the Court picked because the County proffered no evidence to contradict her proposed rate. That is not true—the County did offer evidence. It presented an attorney's affidavit stating that attorneys of similar stature in the region

---

[3] We also note that we rejected the same argument about *Perdue* and *Johnson* that Attorney Pollick made in *Dee v. Borough of Dunmore*, 548 F. App'x 58, 64-65 (3d Cir. 2013).

14

were compensated at rates of $260 and $275 per hour, not far from the $250-per-hour rate the court used. (App. 143.) Second, Pollick argues she deserves relief because she made out at least a *prima facie* case supporting her suggested fee rate, contrary to the District Court's holding. This argument fails, however, because Pollick has not shown that she was prejudiced by the Court's decision on that issue: she still received a hearing and was permitted to present evidence, and the Court recorded its reasoning in a long and thorough opinion. A *prima-facie* holding in her favor would have substantively altered neither that process nor the outcome. We discern no abuse of discretion by the adoption of an hourly rate of $250.

## IV.

The evidence presented at trial was insufficient to create a jury question as to whether the County's FLSA violations were made willfully, and the District Court's attorney's-fee standards were correct and applied without abuse of discretion. We will affirm.