PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1825
_____

LINDA STONE,
on behalf of herself and those similarly situated,
                                        Appellant

v.

TROY CONSTRUCTION, LLC
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-14-cv-0306)
District Judge:  Hon. James M. Munley
_____

Argued
March 12, 2019

Before:  JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Filed: August 20, 2019 )
_____

Matthew D.Miller   [ARGUED]
Richard S. Swartz
Justin L. Swidler
Swartz Swidler
1101 Kings Highway North – Ste. 402
Cherry Hill, NJ   08034
        *Counsel for Appellant*

James N. Boudreau   [ARGUED]
Adam R. Roseman
Greenberg Traurig
1717 Arch Street – Ste. 400
Philadelphia, PA   19103

Michael Burnett
Jacob E. Godard
Greenberg Traurig
1000 Louisiana Street – Ste. 1700
Houston, TX  77002
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Linda Stone sued Troy Construction Inc. ("Troy"), on behalf of herself and others similarly situated, alleging a willful violation of the Fair Labor Standards Act ("FLSA"). She claims that Troy paid local employees per diem compensation that should have been classified as wages and included in the regular rate of pay, which would in turn have

affected the calculation of overtime pay. The District Court was unpersuaded and granted summary judgment for Troy, holding that, as a matter of law, there had been no willful violation of the FLSA. Whether a violation is willful determines the length of the applicable statute of limitations. In light of its holding that there had been no willfulness in this case, the Court applied a two-year statute of limitations and concluded that Stone's claims were time-barred. Because the Court, in effect, applied an incorrect standard in deciding the willfulness question, we will vacate and remand.

## I.    BACKGROUND

### A.    Factual Background[1]

Troy builds and maintains oil and gas pipelines and compressor stations across the country, including in Pennsylvania, where Stone worked. During the relevant period, many of Troy's employees had to travel long distances from their permanent residences to their Pennsylvania worksites, but Troy acknowledges that it also "often hired employees closer to [those] worksites[.]" (App. at 63.) We will refer to the long-distance travelers as "non-local employees" and the local commuters as "local employees." When hiring a new employee, Troy required him or her to fill out a W-4 form for tax purposes, an I-9 immigration form to verify employment eligibility, and a

---

[1] Summary judgment was granted for Troy on the issue of willfulness, so we view the facts and draw all reasonable inferences in Stone's favor. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009).

3

form of Troy's own making to get background information about the employee (collectively, the "New Hire Forms").[2] The New Hire Forms included a space for the employee to note his or her permanent address.

Because non-local employees had to travel long distances to their worksites, Troy paid them a per diem to cover their travel costs.  During discovery, Troy, through a corporate designee, defined the term "per diem" in this context as "a reimbursable -- [i]t's a payment to an employee for a reimbursable expense."  (App. at 68.)  Specifically, the "intent of the per diem" was to reimburse out-of-pocket expenses "[r]elated to traveling to the job, … lodging while the job's going on, [and] meals."  (App. at 69.)  Troy paid per diems to both local and non-local employees, unless an employee opted out by affirmatively telling Troy not to pay the per diem "[a]t the time of hiring."   (App. at 69.)

_____

[2] A "W-4" is a "form indicating the number of personal exemptions an employee is claiming and that is used by the employer in determining the amount of income to be withheld from the employee's paycheck for federal-income tax purposes."  W-4 form, Black's Law Dictionary (11th ed. 2019).  An "I-9 Form requires applicants to check one of three boxes, attesting under penalty of perjury that they are either a 'citizen or national of the United States,' or a 'lawful permanent resident' (and if so, supplying their alien identification number), or an 'alien authorized to work until ____' (and if so, providing the expiration date of their work authorization)."  *United States v. Garcia-Ochoa*, 607 F.3d 371, 373-74 (4th Cir. 2010).

Unsurprisingly, Troy has not identified a single employee who did so.

For local employees, the per diems often represented a large fraction of their income. For instance, Troy paid Stone a per diem of $109 in addition to her hourly wage of $10.75. Thus, even factoring in overtime, the per diems accounted for around 40-56% of Stone's total weekly income from Troy.

In January 2014, Troy, heeding advice from its accountants, started treating per diems paid to local employees as taxable income to those employees. Troy made that tax-accounting change because it understood that a per diem paid to local employees would not have been viewed by the Internal Revenue Service ("IRS") as a proper reimbursement. Instead, the per diem "would have rolled up into [an employee's] *wage* box[,]" on federal income tax returns. (App. at 74 (emphasis added).) The company was thus at pains to distinguish between local and non-local employees to ensure that per diems paid to local employees were reported to the IRS as taxable wages.

Despite changing its accounting practice, Troy did not include per diem payments to local employees in its calculation of those employees' regular rate of pay when determining the company's overtime obligations. Troy admitted that a travel per diem paid to a local employee would not be a reimbursement, but nonetheless, for overtime purposes, the company treated all per diems, whether paid to local or non-local employees, the same way.[3]

---

[3] "Q. … So making [the per diem for local employees] taxable, did Troy Construction no longer

Linda Stone was a local employee of Troy beginning in January 2013. She was fired in March 2013. The reasons for her short tenure and termination are immaterial to this suit. She received nine paychecks from Troy, the first on January 18, 2013, and the last on March 15, 2013. She was paid per diems, but they were not reflected in her overtime compensation.

### B.    Procedural Posture

In February 2014, Stone filed the present collective action, claiming Troy had willfully violated the FLSA, 29 U.S.C. § 201, *et seq.*[4]  (App. at 29.)  She alleges that Troy paid per diems that were not "a legitimate, reasonable reimbursement of expenses incurred" and that she had received per diems that "should have been included in her

---

consider it a reimbursement?  A. We treated [it] as a per diem. We didn't know if they were using the per diem or not."  (App. at 75.)

[4] In addition, Stone alleged two violations of the Pennsylvania Wage Laws, including failure to pay overtime compensation and failure to pay wages earned.  Stone does not challenge that decision and we leave it to the District Court to reconsider whether to exercise supplemental jurisdiction over Stone's state-law claims on remand.  Upon dismissal of the FLSA claim, the District Court "decline[d] to retain supplemental jurisdiction over the remaining state claims" (App. at 17), and Stone does not challenge that decision.

regular [wage] rate." (App. at 36.) The regular wage rate for an employee is supposed to be calculated to include "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). But it does not include "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]" *Id.* § 207(e)(2); *see also* DOL Field Operations Handbook § 32d05a(b) (Feb. 11, 1972) ("[W]here an employee receives [per diems] but actually incurs no such additional expenses, the entire amount of the payments shall be included in determining the regular rate."). Stone's lawsuit sought to recover unpaid compensation that she says would have been paid for overtime work if her base wage rate had correctly reflected the per diem payments she received.

A little over a year into the lawsuit, Troy asked Stone to consent to Troy having "extra time" to submit a responsive filing in the District Court. (App. at 102.) Troy's counsel had scheduling conflicts, and Stone's counsel agreed to an extension, conditioned upon Troy "agree[ing] to toll the statute for the class for the extra time[.]" (App. at 102.) Troy did agree, stating "[w]e … agree to toll the statute of limitations pertaining to the FLSA claim for the same period of time for which the Court grants us an extension[.]" (App. at 103.) Pursuant to that agreement, the District Court ordered that "[t]he statute of limitations pertaining to the FLSA claim shall be tolled from April 13, 2015 to April 27, 2015, at which time it will begin to run again." (App. at 104.)

7

In December 2015, Stone moved for, and the District Court granted, conditional certification of her case as an FLSA collective action. In support of that motion, Stone attached a sworn affidavit describing Troy's per diem payment practice. Many former Troy employees filed consent forms to join Stone's collective action, in accordance with the statutory requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Stone also filed her own formal consent-to-sue form, but not until March 22, 2016.[5] She later contended, and still maintains, that her December 2015 affidavit in support of conditional certification of the collective action should suffice as her consent to sue.

Troy and Stone both moved for summary judgment. In Troy's motion, it argued that Stone's FLSA claim was time-barred because she had failed to file a timely consent-to-sue form, as "[t]he law provides that FLSA claims must be commenced within two years after the cause of action accrued, or within three years if the cause of action arises out of a willful violation." (App. at 8 (citing 29 U.S.C.

---

[5] "Unlike in a Rule 23 class action, where each person who falls within the class definition is considered to be a class member and bound by the judgment unless she has opted out, a plaintiff … must affirmatively opt into [an FLSA collective] action by filing [her] written consent with the court in order to be considered a class member and be bound by the outcome of the action." *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1275-76 (11th Cir. 2018) (third alteration in original) (citation and internal quotation marks omitted).

8

§ 255(a)).) In Stone's motion, she argued that the record had established that Troy had "willfully violated the FLSA as a matter of law" (App. at 122), and so, with application of the three-year statute of limitations, her claim was timely. In opposing Stone's motion for summary judgment, Troy declared that "genuine disputes [of fact] exist regarding whether Troy recklessly disregarded its FLSA obligations." (App. at 137.)

The District Court granted summary judgment for Troy. It rested its decision on its conclusion that, as a matter of law, Troy had not willfully violated the FLSA. The Court made that determination because, in its view, "there [were] insufficient facts for a factfinder to reasonably conclude that the defendant's conduct amounts to … [a willful] FLSA violation." (App. at 10.) Accordingly, despite Troy's admission that genuine disputes existed as to its willfulness, the Court determined that a two-year statute of limitations for non-willful violations applied to Stone's claims, and her claims were thus untimely.

Stone timely appealed.

## II. DISCUSSION[6]

The District Court erred in granting summary judgment for Troy, a result of applying an overly burdensome standard for showing willfulness under the FLSA.[7] Under the proper standard, summary judgment was not warranted because genuine disputes of material fact do indeed exist as to Troy's willfulness in leaving out of the base wage rate for local employees the per diems they were paid. If, after appropriate fact-finding, it should be determined that Troy

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017). A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In making this determination, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel*, 579 F.3d at 286 (citations and internal quotation marks omitted).

[7] In addition to challenging the merits of the District Court's grant of summary judgment, Stone argued that summary judgment in Troy's favor was improper because it was granted *sua sponte*. Because we conclude that summary judgment was inappropriate in light of genuine disputes of material fact, we need not address that argument.

was willful, Stone's opportunity to recover will not be entirely time-barred.

## A. Willfulness Does Not Require Egregious Behavior

The fundamental question in this case is not new. Over thirty years ago, in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the Supreme Court addressed "the meaning of the word 'willful' as used in the statute of limitations applicable to civil actions to enforce the Fair Labor Standards Act[.]" *Id.* at 129. It noted that "[t]he [FLSA] provides that such actions must be commenced within two years 'except that a cause of action arising out of a *willful* violation may be commenced within three years after the cause of action accrued.'" *Id.* (emphasis added) (citation omitted). Then, based on legislative history and the common and legal usage of the word "willful" – "considered synonymous with such words as voluntary, deliberate, and intentional" – the Court concluded that a violation of the FLSA was willful if, at minimum, the employer "showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" *Id.* at 132-33 (citations and internal quotation marks omitted).

The District Court here required a showing of conduct worse than the recklessness identified in *McLaughlin*. It reasoned that "[t]he sole evidence that plaintiffs point to is a 2014 policy change at Troy that determined that per diems paid to employees that permanently resided less than 50 miles from their Troy worksite were to be considered wages for tax purposes." (App. at 10-11 (citation omitted).) In characterizing the record as such, the District Court elided the

11

corporate designee's repeated statements that "unless the employee t[old] [Troy] otherwise, [Troy] assumed that they're an out-of-town employee and [it] pa[id] the per diem." (App. 73; *see also* App. 69, 72, 86.) The Court was satisfied with Troy's rebuttal "that it did not think that the change would implicate the FLSA[,]" and so, as a matter of law, there was no willfulness. (App. at 11.) Yet the Court recognized that Troy "appear[ed] to agree that excluding per diem[s] when calculating overtime rates for [out-of-state] employees is acceptable under the statute." (App. at 11.) Thus, Troy knew that per diems for non-local employees were implicated and permissible under the FLSA, but Troy's professed ignorance about the implications of the same per diems paid to local employees did not trouble the Court. That analysis gives us pause, as it does not give Stone the benefit of a fair inference that Troy did recognize the implication of the per diems paid to local employees.

While the District Court did not explicitly state that Stone had to demonstrate that Troy's actions were worse than reckless, that is what it in effect required. The District Court was evidently looking for something egregious. But any requirement for a degree of egregious behavior conflicts directly with another Supreme Court precedent. In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the Supreme Court made clear that an "employee need not additionally demonstrate that the employer's conduct was outrageous," to demonstrate willfulness.[8] *Id.* at 617. Requiring a showing of

---

[8] *Hazen* addressed the willfulness standard under the Age Discrimination in Employment Act ("ADEA"), which the Court equated through analogy and explicit reference to the FLSA. 507 U.S. at 614-15. "The word 'willful' is widely

12

egregious conduct is tantamount to requiring proof of outrageous conduct, and, thus, is not properly part of the willfulness inquiry.[9]

Troy tries to justify the District Court's more severe test by citing our decision in *Souryavong v. Lackawanna County*, 872 F.3d 122 (3d Cir. 2017). According to Troy, "*Souryavong* makes clear that establishing a willful violation requires … a degree of egregiousness[.]" (Answering Br. at 17.) We disagree.

We directly addressed the difference between egregiousness and willfulness in our post-*Souryavong* opinion in *Bedrosian v. United States*, 912 F.3d 144 (3d Cir. 2018). That case involved a civil penalty for a failure to report certain foreign banking activity. *Id.* at 147-48, 152. We reversed the district court's determination that there had been

---

used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted …–that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute–is surely a fair reading of the plain language of the [FLSA]." *Id.* at 615 (quoting *McLaughlin*, 486 U.S. at 133).

[9] Compare the definition of outrageous – "[e]xceeding all reasonable bounds of human decency; extremely shocking, offensive, or unfair" – with the definition of egregious – "[e]xtremely or remarkably bad; flagrant[.]" Outrageous & Egregious, Black's Law Dictionary (10th ed. 2014).

13

no willfulness in the failure to report, reasoning that the district court's analysis had improperly focused on egregiousness. *Id.* at 153. We held that "the overall egregiousness of [the defendant's] conduct … [was] *not required* to establish willfulness[.]"[10] *Id.* (emphasis added) (internal quotation marks omitted). Referencing the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 57 (2007),[11] we noted that, "where 'willfulness' is an element of civil liability, 'we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well.'" *Id.* at 152 (citation omitted).

Thus, Supreme Court case law and our own precedent counsel against a standard for willfulness that requires a showing of egregiousness. Troy has misread *Souryavong*, but that error, and the District Court's, is understandable, given some of our language in that case.

In *Souryavong*, we affirmed a grant of judgment as a matter of law where the only evidence suggestive of willfulness was an email that postdated the two appealing employees' overtime violations. 872 F.3d at 125-26. We reached that conclusion after discussing the standard of willfulness, reiterating that "[t]he Supreme Court defines

---

[10] Reckless disregard may be satisfied through "evident indifference[,]" *Martin v. Selker Bros.*, 949 F.2d 1286, 1296 (3d Cir. 1991), and egregiousness is not necessary for an employer to disregard a meaningful possibility of violating the FLSA.

[11] *Safeco* relied on *McLaughlin*, 486 U.S. at 132-33, to characterize the willfulness standard. 551 U.S. at 57.

14

'willfulness' to include situations when the employer, at the time of its FLSA violation, either 'knew' its conduct was prohibited by the FLSA or 'showed reckless disregard for the matter.'" *Id.* at 126 (citation omitted). But then we posed a hypothetical. *Id.* at 126-27. We considered whether willfulness could be found if a particular piece of evidence – that email evidencing possible awareness of an FLSA violation – had predated the violations. *Id.* Within that hypothetical framework, we sought a comparison and said that "decisions from our sister circuits indicate that an FLSA violation must have a degree of egregiousness that is lacking [here.]" *Id.* at 127.

That perhaps confusing detour was based on our review of cases from two other circuits. *Id.* First, we considered a Ninth Circuit case finding that "a jury question on willfulness [wa]s present when a city [wa]s well aware of the FLSA's strictures" but "allow[ed] a misclassification of a monthly payment to continue *for nine years*." *Id.* (citing *Flores v. City of San Gabriel*, 824 F.3d 890, 896, 905-07 (9th Cir. 2016)). Then, looking to an Eleventh Circuit case, we noted there was a jury question on willfulness "if a family fail[ed] to pay a nanny a minimum wage," when evidence indicated that "the family 'knew' about minimum wage laws, … the family required her to work twice as many hours as the family claimed, … and instructed her to lie about her employment." *Id.* (citing *Davila v. Menendez*, 717 F.3d 1179, 1182-83, 1185 (11th Cir. 2013)). We compared those examples to Souryavong's case and concluded that "nothing [here] indicates … [a] similar level of recklessness or ill will …. [or] manipulation and concealment[.]" *Id.*

15

Our consideration of a hypothetical and our discussion of egregious behavior in other cases should not, however, mislead litigants or district courts to believe we have established egregiousness as a prerequisite for finding an FLSA violation to be willful. The language from *Souryavong* that Troy leans on is non-binding dictum, *see Abdelfattah v. DHS*, 488 F.3d 178, 185 (3d Cir. 2007) (holding that a particular requirement articulated in a prior decision was dictum when it had no bearing on the outcome of that appeal), and, importantly, if understood as Troy suggests, would be contrary to the Supreme Court's instructions on the meaning of willfulness.[12]    *See Hazen*, 507 U.S. at 617 ("[T]he employee need not additionally demonstrate that the employer's conduct was outrageous[.]"); *United States v. Greenspan*, 923 F.3d 138, 157-58 (3d Cir. 2019) ("[W]e are careful not to read our precedents to gainsay those of the Supreme Court."). Egregiousness is rightly thought of as a high-water mark, representing behavior that clearly establishes willfulness, as opposed to a baseline requirement for such a finding. *See, West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 391 (5th Cir. 2003) (declining to read that Circuit's precedent "to superimpose a heightened test of egregiousness on the requirement . . . that an employer must have known or shown reckless disregard for the matter of

---

[12] To the extent that Troy further contends that *Souryavong* requires an employee to prove willfulness only through direct—as opposed to circumstantial—evidence, we reject that interpretation as inconsistent with *Hazen Paper*. *See Hazen Paper Co.*, 507 U.S. at 617 ("[T]he employee need not . . . provide direct evidence of the employer's motivation[.]").

16

whether its conduct was prohibited[.]" (citation, internal quotation marks, and alterations omitted)).

In sum, willfulness under the FLSA is established where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" *McLaughlin*, 486 U.S. at 133. It does not require a showing of egregiousness. *Hazen*, 507 U.S. at 617.

### B.    Genuine    Disputes    of    Material    Fact Pertaining to Willfulness

When the proper standard for determining willfulness is applied, it becomes apparent that summary judgment should not have been granted because genuine disputes of material fact exist as to Troy's willfulness. Troy itself admitted that. And statements made by its chosen corporate designee, Vice President and CFO Daniel O'Hare, as well as reasonable inferences derived from the record, confirm that a reasonable factfinder could say that Troy had been at least reckless in its accounting treatment of per diems and hence had been willful in violating the FLSA.

It is true that Troy's 2014 change in tax accounting – treating per diems paid to local employees as taxable wages – post-dated the last of Stone's paychecks, on March 15, 2013, but that does not mean that the change has no probative value here. Drawing reasonable inferences in Stone's favor, Troy acted to correct a previously understood incongruity in its per diem payment practices. Having treated those payments as reimbursable expenses when, as paid to local employees, they were actually wages, Troy made the accounting change at a

17

time of its choosing, though its recognition of the need for the change may have come earlier.[13]

Even ignoring that change in accounting practices, however, there was sufficient evidence to create genuine disputes of material fact as to Troy's willfulness. Mr. O'Hare's testimony demonstrated that Troy was aware that a "per diem is a reimbursable" (App. at 68), and that the reimbursement in question was for employee expenses related to traveling to the worksite, like travel, lodging, and food. A per diem paid to a local employee with no such expenses is miscast as a reimbursement. There is simply nothing of significance to reimburse. Since the per diems paid to local employees did not reimburse travel expenses, it would be reasonable to conclude that Troy knew those payments were actually wages.

That Troy understood it was misclassifying wages for local employees could be inferred from its total reliance on employee self-reporting to catch unwarranted

---

[13] Policy concerns sometimes prompt the law to forbid later corrective action from being used as evidence, so as to not pose a disincentive to appropriate changes in behavior. *See* Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence … ."). Neither party suggests that Troy's tax-accounting change falls within that prohibition, and we need not confront that issue now. We merely note that, if presented with evidence of the accounting change, a rational factfinder could conclude that the change is probative of willfulness.

reimbursements. Troy paid local employees per diems "unless [an] employee [told] [it] otherwise[.]" (App. at 73.) Despite "often hir[ing]" local employees, (App. at 63,) Troy simply "assume[d] that [an employee is] an out-of-town employee and [it] [paid] the per diem[]" (App. at 73). Perhaps a factfinder will view that as an innocent act by a well-motivated employer. But a factfinder could reasonably conclude that no sensible employer expects employees to say "don't give me money." Because Troy adopted a blanket policy excluding per diems from all employees' pay despite knowing that it "often" hired local employees, a factfinder could conclude that Troy had to know it was underreporting wages for that part of its workforce. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1270, 1280 (11th Cir. 2008) (finding the jury's determination of willfulness legally sufficient where the employer "never studied" which employees were implicated under the FLSA).

Troy contends it did not have enough information to determine whether a per diem was appropriate because it is difficult to ascertain whether an employee is local or not, since employees often move temporarily. But a jury might find unpersuasive Troy's protestation that it could not determine which employees were, in fact, local. The record makes clear that employees' permanent addresses were provided to Troy and documented in the New Hire Forms. Troy reasons that it "did not know whether the address … listed [in the New Hire Forms] was a permanent address or just a [hotel or temporary] address … for the duration of the Troy project." (Answering Br. at 7.) But Troy could have begun to figure out which employees were local, if it had only elected to look, and, if necessary, ask a question or two. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042

19

(5th Cir. 2010) (finding no clear error in the District Court's finding that an employer acted willfully, despite the employer's argument that the employee "did not give [the employer] enough information about his address change or how much he required in per diem"). In fact, Troy was able to determine where employees permanently resided without any apparent difficulty in 2014, when it started treating local employees' per diems as taxable.

Finally, the size of the per diems payments could also reflect recklessness. The per diems were not some minor fringe benefit, but rather constituted a considerable portion of local employees' pay.

In short, drawing all reasonable inferences in Stone's favor, even without evidence of the 2014 change in accounting practices, there is at least a genuine dispute as to whether Troy knew that per diems paid to local employees were wages that must be included in the regular base rate when calculating overtime pay. Hence, it was not surprising that, while addressing Stone's summary judgment motion in the District Court, Troy frankly admitted that "genuine disputes exist regarding whether Troy recklessly disregarded its FLSA obligations." (D.I. 128 at 12.)

The District Court therefore erred in declaring that "there are insufficient facts for a factfinder to reasonably conclude that the defendant's conduct amounts to something more than an ordinary FLSA violation." (App. at 10.) That error means that the District Court also erred in applying the FLSA's two-year statute of limitations and concluding that Stone's claims were necessarily untimely.

### C. Stone's Claims Were Not All Necessarily Time-barred

To evaluate whether all of Stone's claims were time-barred, the District Court had to determine "the date on which this lawsuit commenced." (App. at 13.) An FLSA collective action is commenced for an "individual claimant-- (a) … when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed [therewith] … ; or (b) if such written consent was not so filed or if his name did not so appear-- … [when] such written consent is filed[.]" 29 U.S.C. § 256. It is an oddity that a plaintiff who files a complaint in her own name, unless she files a separate written consent, is not treated as consenting to join the very lawsuit she initiated. *See*, *e.g.*, *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999) (stating it is "redundant and unusual to make named plaintiffs file their consents with the Court[,]" despite "the fact that th[os]e statutory requirements are repetitive or wasteful, they are the unambiguous requirements which Congress has duly enacted"). Nevertheless, that is one of the shoals on the FLSA waterway, and parties must navigate accordingly.

Deciding whether Stone's claims are timely depends in part on whether her affidavit in support of conditional certification, filed on March 30, 2015, constituted a form of atypical, but acceptable, written consent. Otherwise, Stone was relegated to the date of her formal consent-to-sue form, filed on March 22, 2016. Stone argues that the affidavit was sufficient, while Troy counters that only the later filing served the purpose. The District Court agreed with Troy.

21

Despite acknowledging "considerable flexibility in what constitutes written consent[,]" the District Court concluded that Stone's affidavit was insufficient because it did not "expressly indicate" a desire to consent to be a party plaintiff, "refer to a lawsuit," or "mention any violations of the FLSA." (App. at 15-16.) Rather, it was "merely a reiteration of facts surrounding [Stone's] employment." (App. at 15-16.) Accordingly, the Court used the date of Stone's later-filed consent-to-sue form to start the clock for the statute of limitations. And based on that date, March 22, 2016, and on its conclusion that the two-year statute of limitations controls, the Court held that "plaintiffs' FLSA claim is time-barred[,]" so it granted summary judgment for Troy. (App. at 16 .)

Employees typically supply consent to join an FLSA collective action through a formal consent-to-sue form, but "[c]ourts have shown considerable flexibility in what constitutes 'written consent' as long as the signed document indicates consent to join the lawsuit." *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 454 (D.N.J. 2011) ("With respect to form, courts have shown considerable flexibility as long as the signed document indicates consent to join the lawsuit."). Here, Stone filed her complaint on February 19, 2014. More than a year later, she filed her March 30, 2015 affidavit, and, another year after that, she finally filed a consent-to-sue form, on March 22, 2016. Troy, of course, contends that the statute of limitations bars Stone's claim because her formal consent-to-sue form is the operative document and was untimely. We agree that the affidavit does not qualify as a written consent, but disagree that Stone is necessarily out of court.

22

While there is no uniform test to determine when a document adequately expresses an individual's desire to be an FLSA plaintiff, courts have focused upon whether the document manifests, in some fashion, a clear intent to join the action. *See Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1148-49 (5th Cir. 1970) (where "the original document demonstrated clearly that the plaintiffs, by signing their names, had in fact given their consent to becoming plaintiffs in a suit for recovery under the Act[]" that document "constituted 'written consent' … sufficient to toll the statute of limitations[]"); *Manning*, 817 F. Supp. 2d at 454 ("In some cases, plaintiffs have been deemed to have manifested consent, although they did not submit the specific form approved by the Court."); *see also* Ellen C. Kearns et al., *The Fair Labor Standards Act* § 17.II.B.2, at 16-17 (3d ed. 2018) ("a consent form must clearly manifest the individual's consent to become a party plaintiff to the litigation." (citations and internal quotation marks omitted).) Here, Stone says that her affidavit "asserted several facts supporting her claim that her co-workers were similarly situated with her with respect to her FLSA claims." (Opening Br. at 31.) But the affidavit did not identify Stone as a party, it did not refer to this litigation, and it did not mention any violations of the FLSA. Stone's post-hoc characterization of the affidavit as an FLSA consent to sue seems to be wishful thinking. With the benefit of hindsight, she no doubt wishes she had filed her consent sooner than March 22, 2016, but she did not, and the District Court did not err in concluding that the affidavit was not valid consent pursuant to 29 U.S.C. § 256.

Nonetheless, because Stone's FLSA claim is really a set of claims, those claims are not all necessarily untimely. The parties' tolling agreement suspended the running of the

23

three-year statute of limitations for 14 days, saving two of Stone's claims at the summary judgment stage.

For each payday where Troy "failed to pay" its employees "proper wages[,]" "a new and separate cause of action for unpaid overtime wages accrued[.]" (App. at 12 (District Court Opinion) (citations omitted)); *see Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 187 (6th Cir. 2008) ("A[n] [FLSA] cause of action … accrue[s], as a general rule, at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." (citations and internal quotation marks omitted)). As discussed above, the District Court erred in applying a two-year statute of limitations to Stone's claims. Instead, because there are genuine disputes regarding willfulness, it should have assumed, for purposes of summary judgment, that the three-year statute of limitations applies and then asked whether Stone's claims were timely.[14] *See Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 588 (E.D.N.Y. 2012) ("[G]enerally … where willfulness is in dispute, a three year statute of limitations applies[.]")

Once the longer limitations period is taken into account, the effect of Stone's and Troy's tolling agreement

---

[14] In assuming willfulness for purposes of summary judgment, we in no way imply how that issue should be decided at trial. To the contrary, we recognize that, should a jury find that Troy violated the FLSA but that willfulness was lacking, Stone's claims and those of any plaintiffs beyond the two-year statute of limitations would be time-barred, precluding recovery on those claims. *See* 29 U.S.C. § 255(a).

24

must be considered. The District Court recognized that agreement in an order saying that "[t]he statute of limitations pertaining to the FLSA claim shall be tolled from April 13, 2015 to April 27, 2015, at which time it will begin to run again." (App. at 104.) Troy argues that the agreement "only applied to the claims of *potential* opt-in plaintiffs[,]" and that Stone was not a party of that sort. (Answering Br. at 10 (emphasis added).) That argument, however, is unpersuasive. Neither the order enforcing the agreement nor the set of emails embodying the agreement imposed any such limitation. Rather, those documents make clear that the agreement was for the parties' mutual benefit and that Troy agreed to "toll the statute of limitations pertaining to the FLSA claim[.]" (App. at 103.) There is no indication that the agreement was intended to be solely or even primarily for the benefit of "potential opt-in plaintiffs." The tolling agreement benefited Stone and the potential FLSA class, and was given in exchange for Stone's consent to Troy taking extra time to meet a filing requirement.

Stone's last two paydays were March 8 and 15, 2013. For summary judgment purposes, those two paydays, providing a basis for separate causes of action, each initiated a three-year statute of limitations that was extended 14 days by the tolling agreement. Thus, for the March 8, 2013, payday, she had until March 22, 2016 to file her consent-to-sue form, and for the March 15, 2013, payday, she had until March 29, 2016 to do so, assuming that Troy willfully violated the FLSA and that the three-year limitation period applies. Because Stone filed her formal consent-to-sue form on March 22, 2016, those two claims survive summary judgment.

25

**III. CONCLUSION**

In conclusion, the District Court erred in holding, at the summary judgment stage, that all of Stone's claims were time barred. Summary judgment in favor of Troy was not warranted because, assuming willfulness is established at trial, Stone had two claims that fall within a three-year statute of limitations, as extended by 14 days due to the tolling agreement. We will therefore vacate the District Court's grant of summary judgment in favor of Troy and remand the case for further proceedings.